**SCURLOCK OIL COMPANY and Missouri Pacific Railroad Company, Appellants,**

v.

**Maria C. SMITHWICK, Individually, et al., Appellees.**

No. 13–84–332–CV.

Court of Appeals of Texas, Corpus Christi.

Sept. 12, 1985.

Rehearing Denied Nov. 7, 1985.

A.E. Pletcher, White, Huseman, Pletcher & Powers, Corpus Christi, James W. Kronzer, Houston, James A. Smith, Port Lavaca, Jack W. Tucker, Jr., Weitinger, Steelhammer & Tucker, Houston, Lev Hunt, Hunt, Hermansen, McKibben & Barger, Corpus Christi, for appellants.

Russell McMains, Edwards, McMains & Constant, Corpus Christi, William Seerden, Cullen, Carsner & Seerden, Emmet Cole, Jr., Cole, McManus, Cole & Easley, Victoria, for appellees.

Before NYE, C.J., and BENAVIDES and SEERDEN, JJ.

## OPINION

BENAVIDES, Justice.

This wrongful death action arose from a motor vehicle collision. Appellees are the deceased's surviving spouse, children, and parents. The petition named as defendants appellant Scurlock Oil Company and its employee Ernest Joe Lewis, Victoria Carrier Service (Carrier) and its employee Ronnie Wayne Bounds, and appellant Missouri Pacific Railroad Company (MoPac). Appellees alleged that the collision occurred on December 9, 1982 between a Scurlock truck operated by Lewis and a Carrier vehicle operated by Bounds, and that the deceased was employed by MoPac and being transported by Carrier in the course of that employment when the accident occurred. The jury found that Lewis was negligent and that his negligence was a proximate cause of the collision; that Bounds was acting as a borrowed employee of MoPac within the course of his employment; and that Bounds was not negligent. The trial court therefore entered a take-nothing judgment against Bounds, Carrier, and MoPac; but, pursuant to jury findings on damages suffered by appellees, entered judgment totalling over $4,100,000 against Scurlock. Lewis was dismissed at the commencement of the trial.

The collision that killed the deceased in this case also killed Clay Dove, whose representatives instituted a wrongful death action in another county. In that action the jury assessed liability for Clay Dove's death at 90% to MoPac and 10% to appellant. In its first point of error appellant contends that the trial of this action should have been abated until the Dove appeal was final "so that principles of res judicata and/or estoppel by judgment could be effectively utilized." Similarly, in its second point of error appellant contends that the jury findings in the Dove case should control the determination of the percentage of fault respectively attributable to MoPac and appellant in this action as well. ("Dove case" referred to is styled Missouri Pacific Railroad Company v. Bert L. Huebner, Administrator of the Estate of Clay Carroll Dove, Deceased, Et Al. and numbered 13-84-166-CV in the records of our Court—same cause affirmed the trial court judgment in the 103rd District Court of Matagorda County, Texas in an opinion is-

sued May 30, 1985 with motion for rehearing overruled September 5, 1985.)

The results of the Dove case are inapplicable to the case before us because appellees were not a party to the previous action. Due process requires that the doctrines of res judicata and collateral estoppel operate only against persons who have had their day in court, either as a party to the prior suit or as a privy. *Bonniwell v. Beech Aircraft Corporation*, 663 S.W.2d 816 (Tex.1984); *Benson v. Wanda Petroleum Company*, 468 S.W.2d 361 (Tex.1971); *Olivarez v. Broadway Hardware, Inc.*, 564 S.W.2d 195 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). Similarly, abatement requires a complete identity of parties and issues. *Dolenz v. Continental National Bank of Fort Worth*, 620 S.W.2d 572 (Tex.1981). The authorities are consistent in stating that there is no general prevailing definition of privity; however, a recurring theory suggests that persons are privy to a judgment if, through that judgment, they acceded to mutual or successive rights to the property concerned. Privity is not established by the mere common interest of persons in the same question. *Benson*, 468 at 363; *Lemon v. Spann*, 633 S.W.2d 568 (Tex.App.—Texarkana 1982, writ ref'd n.r.e.); *Olivarez*, 564 S.W.2d at 199. Appellees were not a party to the Dove action and we find no privity of interest with any of the Dove litigants. We note also that the Dove case is on appeal and is not a final judgment. Appellant's first two points of error are overruled.

In its third point of error appellant contends that appellees MoPac, Carrier, and Bounds "were all aligned . . . in fastening the sole responsibility for the occurrence on Scurlock"; thus, the trial court erred by granting to appellees and MoPac a total of nine peremptory challenges, plus a total of six to Bounds and Carrier, but *only* six to appellant. Appellant contended at trial that it was harmed by the "excessive" number of jury strikes because the panel was enlarged from thirty to thirty-three veniremen, and that jurors number 31 and 33 were selected for the jury, both of whom were objectionable to appellant and both of whom "would not have been on this panel if a proper number of strikes had been given to all sides." Neither at trial nor on appeal has appellant stated why the jurors were objectionable. Appellant failed to direct us to a portion of the record which shows whether appellant challenged those jurors for cause or whether any, or all, of appellant's six allotted peremptory strikes were even used. We perceive an analogy between peremptory challenges and challenges for cause. In this case, appellant did not identify the objectionable jurors to the trial court until after the jury panel was selected and sworn; to preserve error, appellant should have made its objection *before* the exercise of peremptory strikes. *Carpenter v. Wyatt Construction Company*, 501 S.W.2d 748 (Tex.Civ.App.—Houston [14th Dist.] 1973 writ ref'd n.r.e.). Appellant should have advised the trial court, prior to exercising his peremptory challenges, that he wanted to challenge particular unacceptable jurors in addition to those peremptorily challenged. *Speer v. Continental Oil Company*, 586 S.W.2d 193 (Tex. Civ.App.—Eastland 1979, writ ref'd n.r.e.). Moreover, the record reflects that the appellant made no requests for additional strikes until after the jury was called to be sworn, and the remainder of the panel was excused from the case, nor did appellant advise the court of which two jurors were objectionable until after the jury was in fact sworn. The said request and objections coming the day after the jury was sworn and impaneled and the remainder of the panel excused. We hold that under such circumstances, appellant has not preserved his complaint.

In addition, we hold that the record shows that the strikes were not distributed 15–6, as appellant claims, but rather 9–6–6; there was a bona fide dispute between Carrier-Bounds and MoPac over the employment status of Bounds that is revealed by both the pleadings and the jury issues. While Carrier-Bounds might have been aligned with MoPac on the issue of whether *appellant's* driver was negligent, it was

clearly not aligned with appellant on the "borrowed servant" issue. TEX.R.CIV.P. 233 instructs the trial judge to "decide whether any of the litigants aligned on the same side of the docket are anagonistic *with respect to any issue to be submitted to the jury ...*" [Emphasis added]. The trial court did not abuse its discretion in aligning the parties as it did.

■ Finally, under Rule 233, the trial court need not award the opposing sides identical numbers of peremptory jury strikes. *Thomas v. Oil & Gas Building, Inc.*, 582 S.W.2d 873 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.); *Dean v. Texas Bitulithic Company*, 538 S.W.2d 825 (Tex.Civ.App.—Waco 1976, writ ref'd n.r.e.). The record reflects that the trial court took care to ensure that appellees and MoPac did not collaborate with the attorneys for appellees and Bounds. Our review of the record convinces us that neither the trial nor the judgment was materially unfair to appellant; consequently, no abuse of discretion is shown and appellants third point of error is overruled. *Thomas, supra*, at 877.

At this point appellees contend that Scurlock's other points of error should be overruled because, in a Motion to Disregard Certain Findings Of The Verdict, appellant admitted its own liability and urged the entry of judgment predicated on the jury's determination of damages. Appellant Scurlock did request the court to disregard the jury finding that Bounds was not negligent, and to enter judgment consonant with the Dove trial "so as to give full effect to the judgment findings" from that action. Appellees argue that Scurlock has thus ratified the jury's answers on damages. Appellees further argue that because the Dove judgment recites the fact that Scurlock was found liable and because Scurlock has not brought forward an evidentiary attack on the jury's liability findings, those findings are admitted and any challenge to the damages is waived.

■ We note, however, that the point of Scurlock's motion was for the trial court to accept the Dove judgment as final, and to

interweave those findings with the damages found in this trial. Since the trial court rejected this contention, appellant was entitled to appeal alternate theories even if the arguments seem facially inconsistent. *Miner-Dederick Construction Corporation v. Mid-County Rental Service, Inc.*, 603 S.W.2d 193, (Tex.1980).

In its fourth point of error appellant Scurlock contends that the trial court erred by allowing the introduction of a settlement agreement that Scurlock had entered into with the Dove family in the Bay City litigation. Appellees called Ernest Joe Lewis as an adverse party. Lewis testified that at the time of the accident he was driving the oil tanker-truck for appellant (his employer), but had since retired. Lewis was named as a defendant in appellant's original petition, but was dismissed when the trial began. Over Scurlock's objection Smithwick was able to inform the jury that:

> Scurlock Oil Company has agreed to accept the guaranty of the remaining Dove family that Mr. Lewis and Scurlock Oil Company will never be required to pay more than two million five hundred thousand dollars in damages regardless of the verdict of the jury in this case.

On the facts of this case, we can think of no legal theory under which this evidence is initially admissible over a proper objection.

■ Information about settlement agreements should generally be excluded from the jury because the agreement may be taken as an admission of liability. *City of Houston v. Sam P. Wallace and Co.*, 585 S.W.2d 669 (Tex.1979). An exception is granted for agreements which cause misalignments of the parties—classically, the "Mary Carter" situations—which thereby present false and misleading portrayals to the jury of the real interests or the parties and witnesses. *City of Houston, supra,* 674; *Duval County Ranch Company v. Alamo Lumber Company*, 663 S.W.2d 627 (Tex.App.—Amarillo 1983, writ ref'd n.r.e.). But the benefit of the exception is normally granted to the party who will be harmed—the non-settling defendant. *See, General*

*Motors Corporation v. Simmons,* 558 S.W.2d 855 (Tex.1977); *McAllen Kentucky Fried Chicken No. 1, Inc. v. Leal,* 627 S.W.2d 480 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.). In the case now before us, appellees have called a non-party as an adverse witness to establish an unquestionably prejudicial guaranteed settlement agreement from another trial after the adverse witness denied knowledge of that agreement. Its admission is useful only to suggest (a) that by agreeing to a settlement negotiation guarantee appellant has previously conceded liability and (b) that the previous lawsuit generated a multimillion dollar recovery. An agreement from another trial with different parties might be admissible under other circumstances, but not these now before us.

■ We find, however, that Scurlock waived the error. In his closing argument to the jury, appellant's counsel injected into this trial evidence of both the previous agreement and a similar one entered into by appellees and MoPac in the action now before us as well as an allusion to the liability of MoPac and the result in the Matagorda County case. He stated:

> As you know, Mr. Edward [Smithwick's counsel] says that Scurlock is a hundred percent at fault. At some point he must not have thought Scurlock was one hundred percent at fault because he got the two and a half million dollars from the Railroad. But they did it out of morality and because they thought so much of their employee. And we all know how moral the Railroad is, so I'm sure that's why they did it.

> Mr. Hunt wants us to believe that, on the one hand, that they did it solely for that reason. They want to talk about: Well, Scurlock, you guaranteed two and half million dollars in another case, other facts, in Matagorda County. I can only suggest to you that after what they found out about their conduct, the Railroad's conduct in Matagorda County, they better get real moral in a hurry in Nueces County.

I don't think anybody comes forward and puts two and a half million dollars on the line unless they feel like they did something wrong at this time. This is after the other trial. This is this trial after what they found out, now they're saying: "Yes, we're moral. That's why we put it up." You believe that if you want to. Now I've heard about the tooth fairy all my life and I've heard about jolly old Saint Nick, but I never heard about generous Saint Mo-Pac. I don't think she exists, and that's just my personal opinion.

By using inadmissible evidence for its own purposes, Scurlock at least correlatively brought itself under the rule that error in admitting evidence is harmless if the objecting party subsequently permits the evidence to be introduced. *Badger v. Symon,* 661 S.W.2d 163 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.)

■ The portion of the agreement introduced by appellees revealed only that Scurlock (in the Dove case) would "never be required to pay more than two million five hundred thousand dollars in damages regardless of the verdict." When Smithwick's counsel asked Mr. Lewis whether he was aware that Scurlock *guaranteed* the Doves a recovery of at least two and a half million dollars, appellant objected to the matter as prejudicial and inflammatory "about another case that has nothing to do with these facts." We think that the *guarantee* is objectionable on different grounds than the objection in general because it is a much more detailed and prejudicial suggestion of liability. Appellant's objection was not sufficiently specific. *Governing Board v. Pannill,* 659 S.W.2d 670 (Tex. App.—Beaumont 1983, writ ref'd n.r.e.); *Texas Municipal Power Agency v. Berger,* 600 S.W.2d 850 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ).

■ Assuming arguendo that the objection would have been specific enough to properly call the specific complaint to the attention of the trial court and preserve the error for review, and that the complained of evidence was not waived by appellant,

such error under the particular circumstances of this case would not require reversal as a harmful error. The impropriety of the guarantee agreement rests upon (1) a suggestion of liability on the part of Scurlock; and (2) a suggestion of a multimillion dollar value (damages) of such guarantee. As to liability, the jury had before it a similar MoPac agreement or guarantee and did not find MoPac liable. We would be hard put to find and indeed here speculate under all the evidence and circumstances of this case that Scurlock was harmed by the complained of error, [especially in the light of the jury's handling of MoPac's similar guarantee], to such an extent as to require a reversal of the trial court's judgment. As to the value, Scurlock does not attack the judgment damages as excessive. In any event, we cannot find that the complained of error would have amounted to such a denial of the rights of appellant in the course of this particular trial as to cause and that such complained of error probably did cause the rendition of an improper judgment. TEX. R.CIV.P. 434. Appellant's fourth point of error is overruled.

In its fifth point of error appellant contends that the trial court erred by denying special issues inquiring (1) whether MoPac was negligent; (2) whether such negligence was a proximate cause of this accident; and (3) what respective percentage of negligence was attributable to Bounds, MoPac, and appellant. Instead, the trial court submitted issues inquiring whether appellant was negligent through Lewis *and* whether MoPac was negligent through Bounds (as a "borrowed employee"). We think the trial court submitted much fairer issues than those requested by appellants and, in any case, appellant's requested issues are only various shades of the controlling issues submitted by the trial court, and as such do not present reversible error. TEX.R.CIV.P. 279. Appellant's fifth point of error is overruled.

In its sixth, eighth, and tenth points of error appellant Scurlock contends that the trial court erred by submitting special issues "inquiring as to damages other than pecuniary losses resulting to" the widow, three children, and parents of the deceased, because such damages are not authorized under the Texas Wrongful Death Act.

The challenged special issues asked the jury to find the value of the past and future damages suffered for, generally, (a) loss of companionship or consortium and (b) mental anguish, grief and sorrow. We find the case of *Sanchez v. Schindler,* 651 S.W.2d 249 (Tex.1983) controlling; the gravamen of that decision was that significant injuries to the familial relationship are worthy of compensation. Thus, parents may recover damages under the Wrongful Death Statute for both mental anguish and loss of society and companionship following the death of a minor child. *Sanchez, supra;* at 254. This rule has been extended to include the death of adult children. *City of Houston v. Stoddard,* 675 S.W.2d 280 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). It is also settled that either spouse may recover for loss of consortium. *Missouri Pacific Railroad Company v. Dawson,* 662 S.W.2d 740 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). Finally, in the case of *Cavnar v. Quality Control Parking, Inc.,* 28 Tex.Sup.Ct.J. 466 (June 5, 1985), the Supreme Court expanded the *Sanchez* rule to include injuries "to the familial relationship resulting from the wrongful death of *any* family member enumerated in TEX.REV.CIV.STAT.ANN. art. 4675 (Vernon 1952)." [Emphasis added]. Article 4675 specifically "enumerates" the surviving husband, wife, children, and parents of the person whose death has been caused. Appellant's sixth, eighth, and tenth points of error are overruled.

In its seventh, ninth, and eleventh points of error Scurlock contends that there was no evidence entitling the deceased's wife, children, and parents to damages for mental anguish, grief, or sorrow, because the record does not reflect that any of the "beneficiaries" sustained physical or "special" injuries requiring treatment and special care as a result of the deceased's death. Appellant asserts that

the lump sum awards in which such complaint of damages were included must fail because of such no evidence contentions. However, the record does not reflect that appellant ever brought the "no evidence" point to the trial court's attention by either a motion for instructed verdict, an objection to the submission of the fact issue, a motion to disregard the jury finding, a motion for judgment notwithstanding the verdict, or a motion for new trial that distinctly raises the "no evidence" points. *Rosas v. Shafer*, 415 S.W.2d 889 (Tex.1967); *Incorporated Carriers, Ltd. v. Crocker*, 639 S.W.2d 338 (Tex.App.—Texarkana 1982, no writ). *Texas Construction Service Company of Austin, Inc. v. Allen*, 635 S.W.2d 810 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). Appellant's seventh, ninth, and eleventh points of error are overruled.[1]

■ Finally, MoPac contends in a single "cross-point" of error that the trial court erred by entering in the judgment the finding that "Bounds was a borrowed employee of [MoPac]." The jury did find, in response to a special issue, that Bounds was acting as a "borrowed employee" rather than as an "independent contractor" at the time of the accident. MoPac argues, however, that inclusion of the finding concerning Bounds was improper because the judg-

ment expressly stated that nothing was to be recovered from MoPac; thus, whether Bounds was a borrowed servant was immaterial. MoPac's concern is that this finding might be used against it in future litigation between Bounds and MoPac. However, the jury answer that Bounds was a borrowed employee was not immaterial until after the jury found that Bounds was not negligent, and we cannot say that the issue was improperly submitted to the jury. In addition, the determination of Bound's status was not relied on by either the trial court or this court in reaching its decision, and it is therefore not res judicata of the issue. *See Burns v. Gonzalez*, 506 S.W.2d 661 (Tex.Civ.App.—San Antonio 1974, writ ref'd n.r.e.). We note also that the elements of collateral estoppel require not only that the litigated facts were essential to the previous judgment, but also that the parties were cast as adversaries. *Benson, supra*, S.W.2d at 362.

All assignments of error are overruled and the judgment of the trial court is affirmed.

---

1. This case is demonstrative of the problems created in multi-party litigation and Mary Carter and/or guarantee agreements. The briefs presented by the parties and authorities cited therein and the trend toward multi-party, multi-cause of action litigation cry out for uniform rules or standards to assist the courts of the State in the handling of such cases.

The difficulties presented to the appellate courts pale in comparison to the trial courts' difficulties in resolving arguments with reference to these matters (too little time to resolve too much, affecting too many in a too often too crowded docket) but, the greatest problem is the problem being created for the litigants, plaintiffs and defendants alike. We recognize the dedication of the appellate courts and particularly of the Texas Supreme Court in resolving these issues and the intent to preserve and protect the interests of all litigants within the framework of our judicial system and established rules of procedure and evidence.

We note that in the criminal system certain types of evidence (i.e., extraneous offense to show pattern, scheme, motive or intent) on po-

tentially highly prejudicial evidence have long been admissible with definite admonitory instruction as to the reason for admission and the limitations of the use of such evidence. We take this opportunity (realizing that some will regard it as an inappropriate opportunity, but believing that more will regard any effort to simplify the Mary Carter Dilema as proper) to suggest that a uniform rule by which such agreements may be introduced with uniform limitations and prescribing admonitory instructions in the court's charge as to why the evidence was admitted and admonishing the jury not to consider same for any other purposes would assist the courts and the litigants. If we trust the juries (and we believe rightfully so) in criminal cases dealing with the freedom of individuals and the protection of the public from crime to follow instructions with respect to evidence of a most highly prejudicial nature, can we not trust the juries in civil cases to hear about the Mary Carter agreements within limits and follow instructions in cases dealing with monetary damages?