**Ouida McCANDLESS, et al.,
Plaintiffs-Appellants Cross
Appellees,**

v.

**BEECH AIRCRAFT CORPORATION,
Defendant-Appellee Cross Appellant.**

No. 84–1621.

United States Court of Appeals,
Fifth Circuit.

Dec. 10, 1985.

John Howie, Darrell Panethiere, Dallas, Tex., for plaintiffs-appellants cross appellees.

R. Brent Cooper, Michael W. Huddleston, Dallas, Tex., for defendant-appellee cross appellant.

Before: GARZA, JOHNSON and JERRE S. WILLIAMS, Circuit Judges.

GARZA, Circuit Judge:

This appeal stems from a wrongful death action brought by the widow and surviving adult children of John T. McCandless. McCandless, a fifty year-old student pilot, was killed while flying a single-engine airplane on January 12, 1979, near Acuff, Texas.

At the time of the accident, McCandless owned and operated or had acquired interests in several businesses, including a ranching operation, a cattle sale barn, a cattle feed lot and an aviation school. The testimony at trial indicates that the McCandless family had been a close, tightly-knit family unit and that John T. McCandless had acquired each of his businesses for the benefit of his children. In fact, on the date of his accident, McCandless had acquired an interest in "Sandene Aviation" with the intention of providing his youngest son, Louis T. McCandless, with a business following college.

It appears from the testimony that McCandless purchased a Beech Baron 95–B55 airplane in December 1978. On January 12, 1979, McCandless left home to take his "check ride," a test by which a student pilot attains a pilot rating. James A. Ridpath, a designated pilot examiner, accompanied McCandless to supervise the check ride. At or about 3:10 p.m. the plane crashed; both McCandless and Ridpath were killed.

The plaintiffs, Ouida McCandless and her children, brought suit in diversity against

Beech Aircraft Corporation ("Beech"). The plaintiffs alleged that Beech designated, manufactured, tested, sold, and delivered the airplane in question in a defective and dangerous condition. A jury trial was had and a verdict rendered against Beech. The verdict apportioned comparative causation [1] of 90 percent to Beech, 10 percent to Ridpath and zero percent to McCandless. The jury awarded damages as follows:

## I. OUIDA MCCANDLESS

A. For her loss of her husband's affection, solace, comfort, society, assistance and relations necessary to a successful marriage and companionship........................................ $ 50,000.

B. For her mental anguish and suffering .............. $ 50,000.

C. For her loss of her husband's support and service .. $200,000.

## II. LOUIS T. MCCANDLESS

A. For his loss of parental companionship, society, instruction and guidance......................................... $ 20,000.

B. For his mental pain and suffering.................. $ 10,000.

## III. DONALD R. MCCANDLESS, JOHN D. MCCANDLESS, AND BILLIE TERRELL

A. For their loss of parental companionship, society, instruction and guidance....................................... $   5,000 each.

B. For their mental pain and suffering ........... $ 10,000 each.

The district court entered judgment against Beech for 90 percent of the damages found.[2]

Beech subsequently filed a Motion for Judgment Notwithstanding the Verdict pursuant to Federal Rule of Civil Procedure 50(b). Beech claimed that there was no evidence offered at trial to support most of the jury's awards. Specifically, Beech argued that the plaintiffs failed to introduce any evidence of pecuniary loss; of physical injury or manifestation thereof

1. Under the rule of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny, the district court, sitting in diversity, was required to apply Texas law in the case at bar. Texas law provides for comparative negligence and apportionment of damages according to fault. *See* Tex.Rev.Civ.Stat. Ann. art. 2212a (Vernon Supp.1985). *See also,*

*Cypress Creek Utility Service Co. v. Muller*, 640 S.W.2d 860, 863 (Tex.1982) ("Damages are now awarded [in Texas] in proportion to the fault of the parties as determined by the jury and expressed as a percentage").

2. The total judgment rendered against Beech was in the following sums:

| | |
|---|---|
| Ouida McCandless | $270,000.00 |
| Donald R. McCandless | 13,500.00 |
| John D. McCandless | 13,500.00 |
| Louis T. McCandless | 27,000.00 |
| Billie Terrell | 13,500.00 |
| Total | $324,500.00 |

that would entitle them to an award for mental anguish; and of loss of society and companionship sustained by all or some of them.

The district court, in its Order of May 24, 1984, granted Beech's motion with respect to the jury's award of $200,000 to Ouida McCandless for the loss of her husband's support and services and set aside the award. However, the court denied Beech's motion in every other respect. The plaintiffs appeal the district court's Order granting Beech's motion in part. Beech cross-appeals the court's Order denying its motion in part. We conclude that the district court erred in granting Beech's motion with respect to the jury's award to Ouida McCandless for the loss of her husband's support and services and in denying Beech's motion with respect to the jury's awards, as to all plaintiffs, for mental anguish and suffering.

*Standard of Review*

In a diversity case, state law determines the kind of evidence that must be produced to support a verdict; however, "the sufficiency or the insufficiency of the evidence in relation to the verdict is indisputably governed by a federal standard." *Fairley v. American Hoist & Derrick Co.,* 640 F.2d 679, 681 (5th Cir.1981) (per curiam); *Jackson v. Johns-Manville Sales Corp.,* 727 F.2d 506, 523 (5th Cir.1984). The standard of review for a motion for judgment n.o.v. "is firmly established in this Circuit." *McCormack v. Noble Drilling Corp.,* 608 F.2d 169, 171 (5th Cir.1979). In determining whether a judgment n.o.v. should be granted,

> the Court should consider all the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to

the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.

*Boeing Co. v. Shipman,* 411 F.2d 365, 374–75 (5th Cir.1969) (en banc) (footnote omitted).

*See also, Thornton v. Gulf Fleet Marine Corp.,* 752 F.2d 1074, 1076 (5th Cir.1985); *International Therapeutics, Inc. v. McGraw-Edison Co.,* 721 F.2d 488, 491 (5th Cir.1983).

■ A verdict must be supported by substantial evidence and may not rest on speculation and conjecture. *Mack v. Newton,* 737 F.2d 1343, 1351 (5th Cir.1984); *Fenner v. General Motors Corp.,* 657 F.2d 647, 651 (5th Cir.1981), *cert. denied,* 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982). In determining whether there was substantial evidence to support the jury's verdict, we are mindful that "our function is limited to determining whether there is a conflict in substantial evidence sufficient to create a jury question." *Two Rivers Co. v. Curtiss Breeding Service,* 624 F.2d 1242, 1249 (5th Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 348 (1981). *See also, Crowe v. Lucas,* 595 F.2d 985, 989 (5th Cir.1979) ("[A] court's task is not to re-evaluate the evidence to form its own conclusion regarding the correctness of the jury verdict. Rather, *Boeing* requires us to determine whether reasonable men could, on

any theory submitted to the jury, have resolved the dispute as the jury did").

*Evidence Supporting Ouida McCandless' Claim for Loss of Her Husband's Support and Services*

The plaintiffs argue that more than adequate evidence of Ouida McCandless' economic loss was presented to the jury. However, our review of the record discloses only the testimony of one witness as bearing directly on the question of economic loss. Bundy Campbell, a rancher of forty years and a neighbor and friend of the McCandless family, testified that it would cost Ouida McCandless $50,000 to hire a "young boy" to replace the decedent.[3]

The district court relied on *Bonney v. San Antonio Transit Co.*, 160 Tex. 11, 325 S.W.2d 117 (1959) in concluding that there was no "probative evidence to support the $200,000.00 award" to Ouida McCandless for the loss of her husband's support and services. In *Bonney* a self-employed watch repairman sustained injuries that included a partial loss of vision. The Supreme Court of Texas held:

> [W]here a plaintiff seeks damages for impairment of earning capacity, he must prove the amount of such damages with the degree of certainty to which it is susceptible.... This rule requires that a plaintiff introduce evidence from which a jury may reasonably measure in monetary terms his earning capacity prior to injury, unless some reason appears for his failure to do so.

*Id.* 325 S.W.2d at 121.

The court reversed the jury's award of $25,000 because Bonney failed to demonstrate "either the amount of [his] earnings or a monetary measure of his earning capacity prior to the injury." *Id.*

The plaintiffs contend that the district court erred in relying on *Bonney* and that the Texas Supreme Court's subsequent decision in *King v. Skelly*, 452 S.W.2d 691 (Tex.1970), is controlling. In *King* a self-employed contractor who was injured in an automobile accident did not offer any evidence concerning his earnings or profits prior to the accident. Nonetheless, the court held that evidence of what King could have earned in the employ of another constituted a sufficient monetary measure of earning capacity:

> King's testimony shows that he could, by performing the same tasks in the employ of another which he performed while self-employed, earn from $14,000.00 to $17,000.00 per year. We hold that such evidence is a sufficient monetary measure of his earning capacity prior to the date of injury and meets the requirements announced in the *Bonney* case.

*Id.* at 694.

We think that *King* modifies *Bonney* insofar as a self-employed worker is concerned. Unlike *King*, the case at bar involves a wrongful death action rather than a suit for personal injuries. We conclude, however, that the cost of hiring another to perform the duties previously performed by the decedent follows from the holding in *King*. Thus, under our analysis of *King*, the plaintiffs have adduced probative evidence of Ouida McCandless' claim for loss of her husband's support and services.

We do not agree with Beech's assertion that it was necessary for the plaintiffs

---

**3.** Campbell's testimony reads in relevant part: **QUESTION:** Mr. Campbell, with your experience in the ranching business, what would it take for someone who had an operating ranch to come in and fill a place like Johnny occupied following his death? What would it take for someone to go out and put somebody on the ranch? **ANSWER:** That is nearly an impossible question for me. It goes back to what I said that if you don't have a million dollar credit rating it is awfully hard to handle a volume big enough to make a reasonable living. It takes a—ranchers are not made, they are kindly a breed of their own that is born. So if you went out to just your—I assume you are asking me if you could find a young boy what it would take to replace him? Moneywise it would take $50,000.00 if you could find one that could fit the qualifications and had the right personal aptitude for it.

\* \* \* \* \* \*

Although Campbell's testimony does not indicate whether the $50,000 figure is a lump sum or annual figure, the more reasonable inference, especially in light of the jury's $200,000 award, is that an annual figure was intended.

to call an expert witness who had been deposed or to introduce additional documentary evidence probative of Ouida McCandless' economic loss. While Campbell's testimony is arguably "a scintilla of evidence," there is no testimony in the record before us, and Beech points out none, which in any way disputes or conflicts with Campbell's testimony. In the absence of such a conflict, we cannot say that the jury's award rests on mere "speculation and conjecture." *See Two Rivers,* 624 F.2d at 1242.

Although Campbell's testimony may be "underwhelming," the facts and every resulting inference, viewed in the light most favorable to the plaintiffs, is sufficient to support the jury's award. *See Thornton,* 752 F.2d at 1076. The district court's Order granting Beech's Motion for Judgment *N.O.V.* with respect to the jury's award to Ouida McCandless for loss of her husband's support and services, therefore, must be reversed.

*Evidence Supporting The Plaintiffs' Claim for Mental Anguish and Suffering*

In *Sanchez v. Schindler,* 651 S.W.2d 249 (Tex.1983) the Texas Supreme Court abandoned its long-extant "pecuniary loss" rule under the Texas Wrongful Death Act, Tex. Rev.Civ.Stat.Ann. art. 4671, which held that parents of a deceased minor child could recover only for pecuniary losses sustained from the minor child's wrongful death:

The real loss sustained by a parent is not the loss of any financial benefit to be gained from the child, but is the loss of love, advise, comfort, companionship and society.... We, therefore, reject the pecuniary loss limitation and allow a plaintiff to recover damages for loss of companionship and society and damages for mental anguish for the death of his or her child.

*Id.* at 251.

In its brief, Beech argues that *Sanchez* should not be extended to encompass actions involving the death of family members other than minor children and that, therefore, the plaintiffs cannot recover for mental anguish as a matter of law. Beech's strict interpretation of *Sanchez* has been recently rejected in *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549 (Tex.1985). Squarely faced with the question before us, the Texas Supreme Court concluded:

There is no logical reason to treat an injury to the familial relationship resulting from the wrongful death of any family member enumerated in Tex.Rev.Civ. Stat.Ann. art. 4675 (Vernon 1952) any differently than an injury to such relationship resulting from the wrongful death of a child. We therefore hold that the Cavnar children were entitled to recover damages for the mental anguish and loss of companionship resulting from the death of their parent.

*Id.* at 551.

Beech next asserts that to recover for mental anguish under Texas law, a plaintiff must suffer and manifest some physical injury beyond mere sorrow or grief. Beech contends that the plaintiffs failed to introduce such evidence. Plaintiffs, on the other hand, argue that evidence of physical injury is unnecessary.

Before *Sanchez,* the Texas rule was that damages for mental anguish could be recovered only if the plaintiff showed an intentional tort, gross negligence, wilfull and wanton disregard, or an accompanying physical injury. *Farmers & Merchants State Bank v. Ferguson,* 617 S.W.2d 918, 921 (Tex.1981). The question is whether *Sanchez* changed the rule. The Texas Courts of Civil Appeals appear divided. *Compare, Baptist Hospital of Southeast Texas, Inc. v. Baber,* 672 S.W.2d 296, 299 (Tex.App.—Beaumont 1984, no writ) ("We believe [*Sanchez*] has now authorized the recovery for mental anguish without proof of physical injury or conduct worse than negligence"); *Missouri Pacific Railroad Co. v. Vlach,* 687 S.W.2d 414, 417 (Tex. App. 14th Dist.1985) ("We do not find in [*Sanchez*] a requirement that proof of ... physical manifestations should be a necessary predicate for recovery for mental anguish") *with, Air Florida, Inc. v. Zondler,*

683 S.W.2d 769, 773 (Tex.App. 5th Dist. 1984) ("we find nothing in either the holding or the rationale of [*Sanchez*] which definitely indicates a change in the former rule requiring proof of an accompanying physical injury").

Although we find both interpretations of *Sanchez* to be plausible, in our opinion the better view and the rule in Texas is that some physical manifestation of mental anguish is necessary. The author of *Sanchez*, Justice Spears, best expressed the guidelines that this Court is constrained to follow in his concurring opinion in *Bedgood v. Madalin*, 600 S.W.2d 773 (Tex.1980):

> The damages recoverable [for mental anguish], however, should be for actual mental injuries rather than for anger or sorrow. In most instances, the normal grief reaction will result in little or no actual mental injury, and the damages suffered will be minimal or nonexistent. When the emotional trauma results in depression or other secondary reactions, however, the plaintiff should recover for the damages incurred.

*Id.* at 779. (Spears, J., concurring).

■ In light of the foregoing standard, we cannot conclude that the plaintiffs presented any evidence of mental anguish beyond mere sorrow or grief. Although the plaintiffs did present evidence as to the effect of the decedent's death on the McCandless family, the evidence relates primarily to the disruption of the family's business and social activities. The record is devoid of any indication of emotional trauma, depression or other physical manifestations of grief. Accordingly, we must reverse the district court's denial of Beech's Motion for Judgment *N.O.V.* with respect to the jury's awards for mental anguish as to all plaintiffs.

*Evidence Supporting The McCandless Sons' Claim for Loss of Companionship and Society*

The United States Supreme Court has defined "society" as embracing a broad range of mutual benefits each family member receives from the others' continued existence, including love, affection, care, attention, companionship, comfort, and protection.

*Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 585, 94 S.Ct. 806, 815, 39 L.Ed.2d 9, 21 (1974) (footnote omitted). Loss of companionship and society must be distinguished from mental anguish: the former entails the loss of positive benefits, while the latter represents an "emotional response to the wrongful death." *Id.* at 585 n. 17, 94 S.Ct. at 815 n. 17.

Beech argues that there is a total lack of evidence supporting the awards to the McCandless sons for loss of companionship and society. Although Beech criticizes the evidence adduced as insufficient to support the jury's awards to the McCandless sons, Beech's failure to challenge the jury's awards to Ouida McCandless and Billie Terrell on the same evidence renders its position inconsistent.

■ In the final analysis, Beech's contention rests on the failure of the McCandless sons to testify at trial. We have found no Texas law supporting Beech's position.[4] We cannot conclude that a plaintiff must testify in order to recover for a loss of companionship and society. Moreover, we can envision situations in which a plaintiff may not be able to testify and must, therefore, rely on the testimony of others as circumstantial evidence of his loss.

■ The plaintiffs presented testimony that the McCandless family was a close, tightly-knit group that worked, played and worshiped together; that the decedent had taken an interest in his childrens' extracurricular activities; and that the decedent had acquired several businesses with the intention of providing his children with vocations that they would enjoy. Photographs of the McCandless family enjoying their familial relationship were also intro-

---

**4.** We would note, moreover, that in its Brief in Support of its Motion for Judgment *N.O.V.*, Beech did not argue that there was insufficient evidence to support the jury's award to Louis T. McCandless for loss of companionship and society, even though he failed to testify.

duced. Finally, Billie Terrell testified that the McCandless family reduced its participation in recreational activities since the decedent's death.

■ We find that the jury had sufficient evidence to conclude that the McCandless sons lost the companionship and society of their father. Moreover, testimony indicating that Louis T. McCandless was living at home at the time of his father's death, and that he was forced to leave college for one year as a result thereof, was sufficient evidence for the jury to infer that Louis' loss was greater than his siblings' and to award Louis greater damages. Thus we hold that, viewed in the light most favorable to the plaintiffs, the evidence adduced was sufficient to support the jury's awards, as to Donald, John, Jr., and Louis McCandless, for loss of companionship and society. The district court's denial of Beech's Motion for Judgment *N.O.V.* in this regard must, therefore, be affirmed.

### Conclusion

In conclusion, we hold that the district court erred in granting Beech's Motion for Judgment *N.O.V.* with respect to the jury's award to Ouida McCandless for the loss of her husband's support and services, and in denying Beech's Motion with respect to the jury's awards, as to all plaintiffs, for mental anguish. However, we conclude that the district court correctly denied Beech's motion with respect to the jury's awards to the McCandless sons for loss of companionship and society. We, therefore, remand to the district court to enter judgment against Beech for 90 percent of the jury's awards, as modified by our opinion herein.

The Order and Judgment of the district court are REVERSED IN PART AND REMANDED and AFFIRMED IN PART.