William O. WHEAT, et al.,
Plaintiffs–Appellees,

v.

UNITED STATES of America,
Defendant–Appellant.

No. 86–1267.

United States Court of Appeals,
Fifth Circuit.

Nov. 30, 1988.
Rehearing Denied Jan. 3, 1989.

Dee V. Benson, Irene M. Solet, Robert S. Greenspan, Atty., Appellate Staff, Civ. Div., Washington, D.C., for defendant-appellant.

William O. Whitehurst, Mack Kidd, Alice Oppenheim, Kidd, Whitehurst, Harkness & Watson, Austin, Tex., for plaintiffs-appellees.

Before GEE, SNEED * and WILLIAMS, Circuit Judges.

GEE, Circuit Judge:

In this case, we are asked to reassess damage awards to the Estate of Shilla Wheat and to her surviving husband and daughters to determine if the awards are excessive or punitive. We conclude that the awards to the Estate of Shilla Wheat and to Shilla Malette Aaron, Mrs. Wheat's minor daughter, are appropriate, given the grievous injury that Mrs. Wheat and her young daughter have suffered. By contrast, the awards to William O. Wheat, Mrs. Wheat's husband, and to Freda Joyce Barlow, Mrs. Wheat's adult daughter, are excessive because they are entirely disproportionate to the injuries that Mr. Wheat and Ms. Barlow sustained. Therefore, we affirm in part and reverse in part.

The district court granted judgment against the United States in a medical malpractice action brought by the plaintiffs against the United States and Dr. Harold L. Wood, a private physician. The action arose out of treatment that Shilla Wheat received from military physicians and from Dr. Wood. The plaintiffs in this action are Mrs. Wheat's surviving spouse, William O. Wheat, her minor daughter, Shilla Malette Aaron, her adult daughter, Freda Joyce Barlow, and her parents, Albert and Catherine Harper. (We shall refer to the plaintiffs collectively as "The Wheats.").

Shilla Wheat endured a four-year battle with undiagnosed cervical cancer. The malignancy caused Mrs. Wheat pain and mental anguish that intensified and spread with each day. Mrs. Wheat's troubles began in 1978 when she visited a military physician at U.S. Darnall Hospital in Fort Hood, Texas for a routine pap smear. The pap smear revealed minimal dysplasia, an early warning sign of cervical cancer. The military physicians did not perform further tests to determine whether Mrs. Wheat had cancer. Mrs. Wheat returned to Darnall hospital frequently in 1978, complaining of abnormal bleeding and abdominal and pel-

* Circuit Judge of the Ninth Circuit, sitting by designation.

vic pain. Despite Mrs. Wheat's continuing symptoms, the physicians did not conduct the tests that would have allowed them to diagnose the malignancy that already had developed.

Dissatisfied with her treatment at Darnall Hospital, Mrs. Wheat turned to Dr. Harold L. Wood, a private physician. In 1979 Dr. Wood performed a hysterectomy on Mrs. Wheat, a measure that caused the malignancy to accelerate. A pathology report, completed immediately after the hysterectomy, indicated that Mrs. Wheat was suffering from Stage II–B cervical cancer. Incredibly, although he noted the diagnosis in his records, Dr. Wood neither informed Mrs. Wheat of the cancer nor treated her for it.

In 1980 Mrs. Wheat returned to the military physicians. She saw numerous physicians many times, complaining of increasing pain that was extending throughout her body. The military physicians responded by prescribing pain medication. As her pain increased, the physicians increased the dosage of pain medication, failing, however, to diagnose or treat the malignancy that was the source of her complaints. The district court found that the physicians' choice of treatment "is evidence that the constant pain Shilla Wheat was suffering was severe enough for a trained physician to prescribe medicines strictly for the pain. Thus, the court finds that the pain Shilla Wheat was suffering was substantial and continuous." Moreover, by July 1980, Mrs. Wheat was showing signs of severe emotional distress and mental anguish, which increased until her death. Two factors exacerbated the mental anguish that accompanied Mrs. Wheat's physical pain: the military physicians failed to explain or diagnose the pain and, perhaps worse, they insisted that the pain was psychological.

As a result of the growing and untreated malignancy, Mrs. Wheat lapsed into renal failure in March 1981. Finally, a physician diagnosed the cervical cancer and began a course of treatment. In addition to the pain Mrs. Wheat had withstood for three years, she suffered the agony of chemotherapy and radiation therapy, as well as the indignity and discomfort of a nephrostomy tube. As Mrs. Wheat's illness progressed, she became unable to care for her young daughter, Malette. Eventually, Mrs. Wheat had to relinquish custody of her child. In September 1981 Mr. Wheat moved his wife to a convalescent home in California. Six months later, in March 1982, Mrs. Wheat died.

Mrs. Wheat's family brought a medical malpractice action against the military physicians under the Federal Tort Claims Act (FTCA), joining an action against Dr. Wood. The case went to trial in the Western District of Texas, and Dr. Wood settled with the plaintiffs before the jury was charged. The district court adjudicated the FTCA action against the United States and held that both the United States and Dr. Wood had committed egregious acts of medical malpractice. Holding that Texas's statutory cap on medical malpractice liability violated the Texas Constitution, the court awarded damages in excess of the statutory ceiling. The district court awarded $6.7 million in damages and apportioned liability equally between the two defendants. The court granted $3 million to the Estate of Shilla Wheat, $1.8 million to William O. Wheat, $1 million to Shilla Malette Aaron, $500,000 to Freda Joyce Barlow and $200,000 to each of Mrs. Wheat's parents, Albert and Catherine Harper.

The United States appeals, raising three issues. First, the United States argues that the district court incorrectly concluded that the Texas statutory cap on medical malpractice liability was unconstitutional. Second, the United States contends that the damage awards are excessive.[1] Finally, the United States maintains that, despite the district court's statements to the contrary, the court used the damage awards as punitive measures.

---

1. The United States appeals only the awards to William O. Wheat, Shilla Malette Aaron and Freda Joyce Barlow. It does not contest the awards to Catherine and Albert Harper, Mrs. Wheat's parents.

## A. The Constitutionality of the Texas Cap on Medical Malpractice Liability.

The district court correctly predicted that the Texas Court would hold that Texas's statutory limit on medical malpractice liability violated the Texas Constitution. The Texas legislature attempted to limit civil liability for physicians and health care providers by placing a statutory cap on the amount of damages that the court could award. Tex.Rev.Civ.Stat.Ann. 4590i, §§ 11.02 and 11.03. Predicting that the Texas Supreme Court would declare the liability cap unconstitutional, the district court awarded damages that exceed the statutory limit. The United States has contended that the district court's prediction was erroneous. While this appeal was pending, however, we certified the question in another case to the Texas Supreme Court, asking the court to decide whether the cap violated the Texas Constitution. *Lucas v. United States*, 811 F.2d 270 (5th Cir.1987). The court held that the cap violated Article I, § 13 of the Texas Constitution, the "open courts" provision of that instrument. *Lucas v. United States*, 757 S.W.2d 687 (1988). Thus, the district court accurately predicted that the Texas Supreme Court would invalidate the statutory limit on liability. As the parties agree, the *Lucas* decision moots the constitutional issue in this appeal. The only issues left for our consideration are whether the damages are excessive and whether they constitute punitive damages.

## B. The Propriety of the Damage Awards.

Ordinarily, the trial court has wide discretion in awarding damages. *Wakefield v. United States*, 765 F.2d 55, 59 (5th Cir. 1985) (citing *Hyde v. Chevron U.S.A., Inc.*, 697 F.2d 614, 632 (5th Cir.1983)). A trial court's assessment of damages is a finding of fact, which we scrutinize under the clearly erroneous standard. *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1356 (5th Cir.1988) (citations omitted); *Sosa v. M/V Lago Izabal*, 736 F.2d 1028, 1035 (5th Cir.1984) (citations omitted). Although it is broad, the trial court's discretion is not boundless; the sky is not the limit for damage awards. *Caldarera v. Eastern Airlines*, 705 F.2d 778, 784 (5th Cir.1983). Unless we are willing to conclude that any verdict, in any amount, is a legally acceptable measure of damages, we must review damage awards. *Wakefield*, 765 F.2d at 59. We stated the test for determining whether a damage award is excessive in *Caldarera*:

> "The jury's award is not to be disturbed unless it is entirely disproportionate to the injury sustained. We have expressed the extent of distortion that warrants intervention by requiring such awards to be so large as to 'shock the judicial conscience,' 'so gross or inordinately large as to be contrary to right reason,' so exaggerated as to indicate 'bias, passion, prejudice, corruption, or other improper motive,' or as 'clearly exceed[ing] that amount that *any* reasonable man could feel the claimant is entitled to.' "

*Caldarera*, 705 F.2d at 784 (footnotes omitted, emphasis in original).

The reassessment of damage awards is not an exact science; rather, it is inherently subjective, involving the interplay of experience, emotions and calculation. *Id.* Although our determination is, by its nature, subjective, we do conduct our analysis within an objective frame of reference: damage awards in similar cases. We have stated that comparing damage awards in similar cases is helpful in determining whether a particular award is excessive. *Wakefield*, 765 F.2d at 59 (citing *Haley v. Pan Am. World Airways*, 746 F.2d 311, 318 (5th Cir.1984); *Ferrero v. United States*, 603 F.2d 510, 514–15 n. 1 (5th Cir. 1979)). On the other hand, we have also observed that we cannot determine excessiveness by comparing damage awards and that each case depends on its own facts. *Id.* (citing *Allen v. Seacoast Prods., Inc.*, 623 F.2d 355, 364 (5th Cir.1980); *Wiley v. Stensaker Schiffahrtsges*, 557 F.2d 1168, 1172 (5th Cir.1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978)); *see, e.g., Hernandez v. M/V Rajaan*, 841 F.2d 582, 587 (5th Cir.1988). Each of our statements is accurate: damage awards in

analagous cases provide an objective frame of reference, but they do not control our assessment of individual circumstances. As we stated in *Wakefield,* "common sense dictates ... that reference to other awards is more or less useful in relation to the number of cases available for comparison as well as the similarity between those cases. Consequently, while a comparison with other awards might serve as a point of reference, ... such comparison is not controlling." *Wakefield,* 765 F.2d at 59–60 (citation omitted). Therefore, when we review a damage award, our first task is to examine damage awards in analogous cases, setting an objective frame of reference for our inquiry. Within this framework, we examine the facts that are unique to each case, asking whether the award is "entirely disproportionate to the injury sustained." We examine separately each of the district court's awards.

### 1. *Estate of Shilla Wheat.*

■ Although larger than damage awards in other cases, the district court's $3 million award to the Estate of Shilla Wheat is not excessive. The United States neither suggests that the award is disproportionate to Mrs. Wheat's injury nor attempts to minimize her injury. Rather, the United States objects to the award only because it is larger than awards made in other, roughly-comparable cases. Our comparison with these cases leads us to conclude, however, that Mrs. Wheat's injury commands an award that is larger than those made. Moreover, the severe intensity and long duration of Mrs. Wheat's suffering demonstrates that $3 million is not disproportionate to the injury Mrs. Wheat sustained.

Mrs. Wheat's injuries warrant a damage award that exceeds awards in other cases. The district court's award is larger than other awards, but Mrs. Wheat's injuries were more severe, devastating and long-lasting than other injuries to which we are referred. In *Hansen v. Johns–Manville Prods. Corp.,* we held that $800,000 was excessive for the pain and suffering that the decedent experienced during his 13–month experience with asbestosis and

mesothelioma. 734 F.2d 1036, 1047 (5th Cir.1984), *cert. denied,* 470 U.S. 1051, 105 S.Ct. 1749, 84 L.Ed.2d 814 (1985). The maximum amount that the jury could properly have awarded was $250,000. *Id.* We reduced a burn victim's damages from $10 million to $1 million in *Sosa* because the plaintiff did "not have to endure the sort of excruciating pain that might support an award of $10 million." *Sosa,* 736 F.2d at 1035. The court in *Ford Motor Co. v. Durrill,* held that $1.7 million, rather than $2.5 million, was the appropriate measure of damages for a burn victim who died shortly after receiving her injuries. 714 S.W.2d 329, 346 (Tex.Civ.App.—Corpus Christi, 1986, no writ). The plaintiff's damages were "necessarily limited to a large extent to the duration and effect of her pain and suffering. She lived but a short length of time, seven and one-half days." *Id.* at 345. *Hansen, Sosa* and *Durrill* establish a framework for awards for severe injuries, with damages ranging from $250,-000 to $1.7 million.

Mrs. Wheat's four-year losing battle with undiagnosed, untreated and unexplained pain is, in comparison, more grievous than the injuries that the *Hansen, Sosa* and *Durrill* plaintiffs suffered. In *Sosa,* we allowed $1 million for pain and suffering that would persist for the remainder of the burn victim's life. Mrs. Wheat suffered for four years; but during that time, she endured pain that steadily increased and that was compounded by intense mental anguish. The court in *Durrill* limited the award in relation to the duration and effect of the injury. The burn victim in *Durrill* lived in excruciating pain for seven and one-half days; her award was $1.7 million. Mrs. Wheat lived in increasing physical and mental agony for four years; given the duration of her injury, her award should exceed $1.7 million. Mrs. Wheat endured injuries—both physical and mental—that are unparalleled in duration, extent, effect and intensity. Her suffering commands a damage award that exceeds the referenced ones.

A $3 million award, moreover, is not disproportionate to Mrs. Wheat's injuries.

The United States does not suggest that $3 million is out of proportion, and we find no evidence in the record that would indicate that the award is disproportionate. Having thoroughly described the uniquely severe injuries that Mrs. Wheat sustained, we need not delve into additional details about Mrs. Wheat's condition. We conclude that $3 million is not an excessive award.

### 2. *William O. Wheat.*

■ The district court's $1.8 million award to Mr. Wheat is grossly disproportionate to the injury he sustained and, therefore, is excessive. The district court's award includes past and future loss of consortium, past and future loss of services, care, maintenance, support, advice, counsel and contributions of pecuniary value. The United States refers us to cases in which the damage awards to surviving spouses were less than $1.8 million. The Wheats reference damage awards to surviving families that were larger than $1.8 million. None of the cases on which either party relies involved a spouse who endured his wife's four-year battle with an undiagnosed and untreated disease and, thus, none are particularly helpful. Reviewing Mr. Wheat's injury award, however, reveals that the award is disproportionate to the injury. The maximum that the trial judge could have awarded Mr. Wheat is $900,000.

The United States refers us to six cases in which damage awards to surviving spouses ranged from $40,000 to $700,000. In *Hansen,* we reduced from $260,000 to $40,000 a surviving spouse's award for loss of care, services, advice, counsel and pecuniary contributions. 734 F.2d at 1046–47. We held in *Caldarera* that a husband whose wife died in an airplane crash was entitled to $250,000, not $400,000, for loss of his wife's love, companionship and affection. 705 F.2d at 785. Similarly, we upheld an award of $250,000 for the surviving spouse of an airplane crash victim in *McCandless v. Beech Aircraft Corp.,* 779 F.2d 220 (5th Cir.1985), vacated on other grounds, 798 F.2d 163 (5th Cir.1986). Reviewing awards to spouses whose husbands died in automobile collisions, the Texas Courts have upheld damages of $250,000

for loss of society and $500,000 for loss of consortium and pecuniary contributions. *Estate of Clifton v. Southern Pac. Transp. Co.,* 686 S.W.2d 309 (Tex.Ct.App. —San Antonio, 1985); rev'd on other grounds, 709 S.W.2d 636 (Tex.1986); *Monsanto Co. v. Johnson,* 675 S.W.2d 305 (Tex. Ct.App.—Houston [1st Dist.], 1984, writ ref'd n.r.e.). Finally, in *Stanford v. McClean Trucking Co.,* the court awarded $400,-000 and $700,000 to two husbands who lost their wives in a traffic accident. 506 F.Supp. 1252 (E.D.Tex.1981). These cases provide only a loose frame of reference that gives us a rough approximation of the size of award that would be appropriate for Mr. Wheat.

None of the cases to which the United States refers us is closely analagous to this case. With the exception of *Hansen,* none of the cases involved a lingering illness similar to Mrs. Wheat's. The district court emphasized the agony that Mr. Wheat endured for four years as he witnessed his wife's unexplained pain and illness. The physicians' insistence that Mrs. Wheat's problem was psychological compounded Mr. Wheat's mental anguish. The loss of a spouse in, for example, a plane crash is not closely analagous to the loss of a spouse through a slow, lingering death.

The Wheats rely on four wrongful death cases with damage awards ranging between $1 million and $8 million. In three of the four, the court upheld large aggregate damage awards granted to multiple parties. In *Gutierrez v. Exxon Corp.,* for example, the court granted $1.2 million in damages to two surviving parents. 764 F.2d 399 (5th Cir.1985). The court in *Scurlock Oil Co. v. Smithwick,* awarded $4.1 million to a surviving spouse, children and parents. 701 S.W.2d 4 (Tex.Ct.App.—Corpus Christi, 1985), rev'd. on other grounds, 724 S.W.2d 1 (Tex.1986). Four estates, along with spouses and children, received a total of $8 million in *Yowell v. Piper Aircraft Corp.,* 703 S.W.2d 630 (Tex.1986). Although the district court's $1.8 million award is within the range of awards on which the Wheats rely, comparing the

aggregate awards to Mr. Wheat's individual award is not particularly helpful.

The Wheats also refer us to *Gulf States Utilities Co. v. Reed,* where the court awarded the mother of a deceased minor child $500,000 for loss of society and $500,000 for mental anguish. 659 S.W.2d 849, 855 (Tex.Ct.App.—Houston [14 Dist.] 1983, writ ref'd. n.r.e.). The *Reed* decision is only slightly more helpful than the decisions granting aggregate awards. The plaintiff in *Reed* was a mother who lost her minor child, not a husband who lost his wife. Both losses are significant, but not necessarily analagous for purposes of reviewing damage awards. Even if the loss of a child and the loss of a spouse were comparable, the injury that the *Reed* plaintiff suffered is different from the injury that Mr. Wheat suffered. Unlike Mr. Wheat, the *Reed* plaintiff was hospitalized for five months to treat the emotional problems that she encountered after her child's death. *Id.* When we consider all of the damage awards that the parties have offered, we find only a rough approximation of the appropriate range of damages for a surviving spouse.

Within this loose framework, we turn to the facts of this case and conclude that $1.8 million is disproportionate to the injury that Mr. Wheat sustained. Mrs. Wheat, who endured four years of physical pain and mental anguish, received $3 million in damages. Mr. Wheat received $1.8 million, almost two thirds of the amount the court awarded to his wife's estate. We do not attempt to minimize or belittle Mr. Wheat's suffering. Mr. Wheat's suffering, however, was not of the same magnitude as his wife's and does not justify an award that is almost as large as his wife's. The maximum that the fact finder could properly have awarded Mr. Wheat is $900,000.

### 3. *Shilla Malette Aaron.*

■ The $1 million award to Mrs. Wheat's minor daughter, Shilla Malette Aaron, is not excessive. The court awarded damages for Malette's loss of care, maintenance, support, services, education, advice, counsel, love, companionship, and pecuniary support and for Malette's mental anguish. The United States argues only that $1 million is more than any court has awarded to a surviving child under Texas law; it does not suggest that the award is disproportionate to Malette's injury or seek to minimize her injury. Relying on *McCandless, Stanford,* and *Clifton,* the United States refers us to damage awards to surviving minor children that range from $5,000 to $400,000. *See McCandless,* 779 F.2d at 222; *Stanford,* 506 F.Supp. at 1259; *Clifton,* 686 S.W.2d at 318. None of these cases, however, involved an injury similar to Malette's. None of the surviving children endured a parent's four-year, lingering and painful death. Moreover, none of the children were forced to leave their parent's custody as the parent became increasingly debilitated by illness. The Wheats again refer us to large aggregate awards in several wrongful death cases, which again are not helpful. There is little basis for comparing the aggregate award to several parties with the award to an individual. Given that the cases available for comparison are not closely analagous to this case, the comparison does little to advance our inquiry.

Malette's injury was severe enough to warrant a $1 million award. At a young age, Malette observed her mother's physical and mental anguish. Malette then was deprived of her mother when illness forced Mrs. Wheat to relinquish custody of the child. The deprivation became permanent when Mrs. Wheat passed away. A $1 million award is not disproportionate to the deprivation Malette has suffered. We affirm the district court's award.

### 4. *Freda Joyce Barlow.*

■ The district court's $500,000 award to Freda Joyce Barlow, Mrs. Wheat's adult daughter, is disproportionate to her injuries. Neither of the parties refers us to any award to adult children whose parents have died. The awards for minor children who have lost their parents are not helpful. A minor child suffers a more grievous loss when a parent dies than does an adult child. Although we must evaluate this

award without the benefit of analgous cases, we can conclude that the award was excessive. Ms. Barlow did not live with her mother and was not dependent on her mother for financial support. An adult at the time of her mother's death, Ms. Barlow received an award that was half the size of Malette's award; yet Ms. Barlow did not suffer the loss of her mother during her formative years, did not endure, first hand, her mother's physical pain, and was not forced by illness to leave her mother's care. Ms. Barlow's loss, although painful, is not as severe as Malette's loss. Ms. Barlow's injury does not warrant an award that is half as large as Malette's. We hold that $250,000 is the maximum that the district court could properly have awarded Ms. Barlow.

### C. Punitive Damages.

■ The district court did not use the damage awards as punitive measures. The United States correctly states that punitive damages are prohibited in FTCA actions and that damages exceeding the plaintiff's actual loss are considered punitive under the FTCA. 28 U.S.C. § 2674; *Flannery v. United States*, 718 F.2d 108, 110–11 (4th Cir.1983), *cert. denied*, 467 U.S. 1226, 104 S.Ct. 2679, 81 L.Ed.2d 874 (1984). Asserting that the district court's damage awards are excessive, the United States concludes they are punitive. We disagree.

■ The FTCA limits damage awards to amounts that compensate, reimburse, recompense, or redress a plaintiff for his injuries. *Flannery*, 718 F.2d at 110–11. The *Flannery* court held that if an award gives the plaintiff more than the actual loss that he suffered, it is punitive—and prohibited—under the FTCA. *Id.* In addition to future medical expenses, the district court in *Flannery* awarded a permanently comatose plaintiff $1.3 million for loss of enjoyment of life. *Id.* The amount the court awarded for the plaintiff's future medical expenses provided for all of his needs, and the plaintiff could not benefit from the $1.3 million. *Id.* Because there was no relationship between the $1.3 million award

and the plaintiff's loss, the court held that the award was punitive. *Id.*

Unlike the damages in *Flannery*, the amount that the district court awarded was based on the loss to each of the plaintiffs. The district court carefully explained the basis for each award and the loss that each award was meant to redress. The money directly compensates each claimant and redresses each of them for specific past and future losses. Damage awards are not punitive merely because they are large.

Moreover, the district court's unpublished opinion makes clear that it did not use the damage awards as punitive measures. The district court did not disguise its disgust with the behavior of the physicians who treated Mrs. Wheat. Despite its disdain, however, the court acknowledged that the FTCA prohibits punitive damages and specifically noted that it was not awarding punitive damages. We decline to conclude that the district court made these statements gratuitously or in an effort to shield its decision from reversal.

We affirm the district court's awards to the Estate of Shilla Wheat and to Shilla Malette Aaron. We vacate the court's awards to William O. Wheat and to Freda Joyce Barlow and remand the case to the district court for retrial unless Mr. Wheat accepts a remittitur to $900,000 and Ms. Barlow accepts a remittitur to $250,000.

**AFFIRMED IN PART AND REVERSED IN PART.**

JERRE S. WILLIAMS, Circuit Judge, concurring in part and dissenting in part:

I am in full agreement with all those portions of the majority opinion that uphold the damage awards of the district court. I must express my strong opposition to those portions of the opinion requiring a remittitur of 50% of the damages awarded the husband of the deceased, William Wheat, and her older daughter, Freda Joyce Barlow.

We do not have in this case a "runaway jury". The case was decided and the damages were assessed in a trial before the district court itself. The district judge's

judgment is based upon a meticulous and thorough opinion of 59 pages. The opinion captures the flavor of the acute mental distress that all of the parties went through as Mrs. Wheat's life dwindled away for over four agonizing years as the result of monumental ineptitude on the part of both civilian and military doctors.

The opinion of the district court emphasized the importance of the agonies that the involved persons went through, not to justify punitive damages or to attempt to achieve punitive force to the damages awarded. The opinion for the majority correctly recognizes that punitive motives did not enter into the district court's calculus. Rather, the purpose of the detail was properly to show the intense mental anguish and suffering of not only the deceased but all of those who were close to her during this time. Here was a woman dying of undiagnosed cancer and in the most intense pain and being told in effect that she was losing her mind, that her pain and other physical symptoms were mental. The majority opinion properly reviews and accepts the flavor of the justification for a high level of damages for mental anguish for all of the parties involved.

The matter of greatest concern to me is the conclusion by the majority that the damages carefully assessed in favor of the named plaintiff, the surviving widower, must be reduced 50% from $1,800,000 to $900,000. The Court points to what it insists is a distortion in awarding $1.8 million to the surviving widower as being far too high when the damages awarded to the estate of decedent, of which it approves, were $3 million.

In requiring this reduction the Court is creating an even more serious and unrealistic distortion. It approves the award of $1 million to Mrs. Wheat's minor daughter, yet requires Mrs. Wheat's deceased husband to accept an award of a lesser amount. For two reasons this distortion is unacceptable.

In the first place, while the child was close to her mother and was a minor and undoubtedly had great mental anguish, she did not "participate" in the mental anguish of the family situation to the same extent as did Mr. Wheat, her stepfather. The daughter could not supply the needed solace to an adult woman seriously ill and in great pain who was being told it was all in her mind. It was up to the husband to deal with this anguish day by day. Further, for the last six months of his wife's life, William Wheat moved her to California for better care, and he moved with her. The younger daughter, in the meantime, had moved back to Arkansas.

If this were a case of terminal illness which all the parties knew and accepted from the beginning, it might be justified to find a greater level of anguish and suffering on the part of a minor child than on the part of a spouse. I am exceedingly doubtful, but this might be justified. But it clearly cannot be justified in a situation where the mental anguish is much more than the acceptance of a terminal illness but consists of the necessity to deal with the wasting away of a human life from rampant cancer while the doctors insist that her troubles were all in her mind. The mental anguish of a husband dealing with and caring for his wife under those circumstances is a far greater level of suffering than just an acceptance of terminal illness. And only the husband can share to the full extent that suffering and the mental anguish in those circumstances.

Second, the distortion is seen to be even greater, however, when it is seen that a substantial part of the damages must consist of the loss of consortium in the case of the husband and the loss of companionship, advice, love, and affection on the part of both the husband and the daughter. The life expectancy of the marriage was around 40 years. The loss in substantial measure of the close companionship, guidance, and advice by the daughter is much more realistically less than ten years. Under the modern definition, adulthood begins at 18 years. The daughter lost only a little over four years as the minor child of the deceased woman. The chances of the daughter being part of the household after that time would decrease rapidly. Certainly in most instances she would have left the

home in marriage or in independent living before she was 24.

Yet, we have the spectacle in this case of the Court awarding this daughter more damages for the loss of her mother than are awarded this devoted spouse who actually went through the agonies of his dying wife in a more intimate fashion than any other person could and who had by all evidence an exceedingly happy marriage with the prospect of it lasting as a matter of consortium, close companionship, advice, and love for another 40 years. I cannot accept $900,000 damages for the surviving widower with $1 million damages, approved by the majority, for the teenage daughter. The $1.8 million award of damages to the widower should stand.

The award of $500,000 for the adult daughter of the deceased is admittedly harder to justify. She had married and left the home. She had a child and then was divorced. She had a great deal of comfort, guidance, and concern from her mother through the difficult times of the divorce. Her mother continued to be close to her, making clothes for her and engaging in other activities which showed a close family tie between them.

The critical point here is that we are not to justify either the $1.8 million or the $500,000 award. As the opinion for the Court properly points out, ours is a far more restricted role. Admittedly, it is a strange anomaly in our law that the findings of fact of the judge without the jury are subject to broader scrutiny by the appellate court than the verdict of a jury.. We apply the clearly erroneous standard in reviewing the decision of a trial before the judge under Fed.R.Civ.P. 52(a).[1] This rule also admonishes us, however, to give "due regard ... to the opportunity of the trial court to judge the credibility of the witnesses."

But in evaluating the district court's findings of fact under the clearly erroneous standard, there is an additional factor properly taken into account. It is well established that the district court has "great latitude in awarding damages." *Hyde v. Chevron U.S.A., Inc.*, 697 F.2d 614, 632 (5th Cir.1983). In view of this latitude lodged in the trial court, we must recognize that to set aside the ultimate award of damages we must be willing to say that both of these awards the Court sets aside are so large as to "shock the judicial conscience". They are so large "as to be contrary to right reason" or so "exaggerated as to indicate 'bias, passion, prejudice, corruption, or other improper motive' ", or as "clearly exceeding that amount that any reasonable man could feel the claimant is entitled to." I am quoting from the majority opinion's quotation of the standard we use in evaluating an award of damages as stated in *Caldarera v. Eastern Airlines*, 705 F.2d 778, 784 (5th Cir.1983). In spite of the "clearly erroneous" rubric on findings of fact, in the ultimate setting of the amount of damages the test "for the determination of whether an award is excessive" has since been confirmed both as to juries and as to the court itself as the test quoted by the court in *Caldarera* and paraphrased and evaluated immediately above. *Wakefield v. United States*, 765 F.2d 55, 59 (5th Cir.1985).

In accordance with the carefully considered and thoroughly explained conclusions of the district court as to the amount of damages awarded to all of the participants in this case, including the widower and the older daughter, and in the recognition of the great latitude we honor in a trial court's awarding of damages, and in the recognition by this Court that *Caldarera*, as pointed out above, states the test for the determination of whether an award is excessive, I must conclude that the majority is not correct in requiring the remittitur of

---

**1.** Jury trials are protected from reexamination by the courts of findings of fact because of the requirements of the Seventh Amendment to the United States Constitution that "no fact tried by a jury shall be otherwise reexamined in any Court of the United States than according to the common law." In *United States v. United States*

*Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948), the Supreme Court said:
Since judicial review of findings of the courts does not have the statutory or constitutional limitations of findings ... by a jury, this Court may reverse findings of fact by a trial court where "clearly erroneous".

damages in the case of the widowed husband or the older daughter. We are required to recognize and accept a thorough, careful, and reasonable evaluation of the damages by the district court. We have such an evaluation in this case. I would accept it and affirm its decision in all respects.

