**Reve THOMAS, Appellant,**

v.

**OIL & GAS BUILDING, INC., Wally Lucio and E. D. Hand, Appellees.**

**No. 1348.**

Court of Civil Appeals of Texas, Corpus Christi.

April 19, 1979.

Rehearings Denied June 13, 1979.

David L. Perry, Edwards & Perry, Corpus Christi, for appellant.

William A. Abernethy, Meredith, Donnell & Edmonds, David J. Dunn, Dyer, Redford, Burnett, Wray & Woolsey, Guy H. Allison, Jack K. Dahlberg, Jr., Corpus Christi, for appellees.

## OPINION

BISSETT, Justice.

This is a slip and fall case. Reve Thomas brought suit against Wally Lucio, E. D. Hand and Oil & Gas Building, Inc., to recover damages allegedly sustained by her when she slipped and fell in a hallway in a building owned by Oil & Gas Building, Inc.

Reve Thomas sought a joint and several judgment against the three defendants, each of whom filed a general denial and a plea of contributory negligence. In addition, Oil & Gas Building, Inc., brought a cross-action against Wally Lucio and E. D.

Hand for indemnity, or in the alternative, contribution, should plaintiff recover any money damages against it.

Trial was to a jury. All issues respecting the liability of Wally Lucio and Oil & Gas Building, Inc., were answered favorably to them. The jury, however, convicted E. D. Hand of negligence which proximately caused the fall. In answer to the comparative negligence issue, the jury found that the percentage of negligence attributable to Reve Thomas was 45% and that attributable to E. D. Hand was 55%. With regard to the damage issues, the jury found that the reasonable medical expenses incurred by Reve Thomas in the past were $1,956.45; the amount of medical costs she would, in reasonable probability, incur in the future were $500.00; and the amount for loss of earning capacity in the past was $1,000.00. Based on the jury verdict, judgment was rendered for Reve Thomas against E. D. Hand for $1,901.05 and that she take nothing against Wally Lucio and Oil & Gas Building, Inc. Only Reve Thomas has perfected an appeal to this Court.

Some several weeks before plaintiff slipped and fell, an officer of the defendant Building contracted with the defendant Hand for the purchase and installation of carpet in the central hallway of an office building, which was owned by the Building. Hand then hired the defendant Lucio to install the carpet. There was no contact thereafter between the Building and Hand, and there was never any contact between the Building and Lucio.

By her first point of error, plaintiff attacks the trial court's action in allowing the defendants a total of nine peremptory challenges to the jury panel, as opposed to only six such challenges allowed to her. Prior to the jury voir dire, plaintiff orally moved the trial court to equalize the jury strikes so that the total number of strikes allocated to her would equal the total number allocated to all of the defendants combined. In support of her motion, plaintiff argued that there was no practical antagonism between

the three defendants, as evidenced by the pleadings and by a representation by counsel for all defendants that they intended to collaborate in making their jury strikes. This motion was overruled, and the court allocated six strikes to plaintiff and three each to the defendants.

■ Rule 233, T.R.C.P., provides that each party to a civil suit tried in a district court shall be entitled to six peremptory challenges. The term "each party," as used in the Rule, does not mean the same thing as the word "person," but means each litigant or group of litigants whose interest is antagonistic to another litigant or group of litigants. *Retail Credit Company v. Hyman*, 316 S.W.2d 769 (Tex.Civ.App.—Houston 158, writ ref'd). The question of antagonism is to be determined by the information available at the time to the trial court revealed from an analysis of the pleadings, as well as from facts disclosed by pre-trial proceedings and which have been specifically called to the court's attention. *Perkins v. Freeman*, 518 S.W.2d 532 (Tex.Sup.1974). The inquiry is whether there is an antagonism as to fact issues on which the jury will pass. *Perkins, supra.*

To be considered in connection with Rule 233 in multiple party cases is Tex.Rev.Civ. Stat.Ann. art. 2151a (Supp.1978–79), which became effective on July 15, 1971. It reads:

"After proper alignment of parties, it shall be the duty of the court to equalize the number of peremptory challenges provided under Rule 233, Texas Rules of Civil Procedure, Annotated, in accordance with the ends of justice so that no party is given an unequal advantage because of the number of peremptory challenges allowed that party."

In construing article 2151a, this Court held, in *King v. Maldonado*, 552 S.W.2d 940 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n. r. e.) that:

". . . in multiple party cases, Article 2151a does not require, as a matter of

law, that each side, after alignment, is entitled to the same number of peremptory challenges as that allowed the opposite side. If the Legislature, in enacting the statute, had intended in all such cases for each side to have the same number of peremptory challenges following proper alignment of the parties, the statute would have so stated. Since it did not do so, the matter is left to the sound discretion of the trial court."

See also *Dean v. Texas Bitulithic Co.,* 538 S.W.2d 825 (Tex.Civ.App.1976, writ ref'd n. r. e.).

After the parties were aligned by the trial court, it became the court's duty to equalize the number of peremptory challenges "in accordance with the ends of justice so that no party is given an unequal advantage." The interests of the defendants in this case were clearly antagonistic on some of the issues. Any advantage which the three defendants may have derived by being allowed to collaborate in making their strikes was offset by the granting of only three peremptory challenges to each of the defendants instead of six.

■ Plaintiff further contends that the allocation of nine extra strikes to the three defendants was materially unfair. In support of that contention plaintiff argues that it filed a "Bill of Exceptions" with the trial court which advised the court that had she been given the additional strikes, she would have struck four named persons. The document which is contended to constitute a Bill of Exceptions appears in the transcript, not in the statement of facts.

Rule 372(f), T.R.C.P., reads:

"Bills of exceptions not in the statement of facts shall be presented to the judge for his allowance and signature."

The record does not reveal that the purported bill was ever presented to the judge for his allowance. The document does not bear the signature of the trial judge. The asserted "Bill of Exceptions" is not in compliance with Rule 372(f); we do not consider it for any purpose. See *Goodpasture v. Coastal Industrial Water Authority,* 490 S.W.2d 883 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n. r. e.); *Scoggins v. Scoggins,* 531 S.W.2d 245 (Tex.Civ.App.—Tyler 1975, no writ); *Burchfield v. Geitz,* 516 S.W.2d 229 (Tex.Civ.App.—El Paso 1974, no writ).

■ Under the record here presented, we do not believe that the action by the trial court in allocating three peremptory challenges to each defendant and six peremptory challenges to plaintiff resulted in a trial or judgment that was materially unfair to plaintiff. No abuse of discretion is shown. Plaintiff's first point is overruled.

The jury, in answer to Special Issue No. 2, answered "No" to the inquiry as to whether Lucio's failure to warn plaintiff of the glue on the floor of the hallway was negligence which proximately caused the fall, and in answer to Special Issue No. 3, answered "No" to the inquiry as to whether Lucio's failure to barricade or rope-off entrances to the hallway was negligence which was a proximate cause of the fall. Those answers are attacked by plaintiff in her third and fourth points as being against the overwhelming weight and preponderance of the evidence.

The carpet installation process involved spreading of glue on the existing vinyl floor of the Building and then laying rubber-backed carpet over the glue. The following diagram shows the layout of the hallways of the Building, and the offices that open into the hallways:

[See following illustration.]

Lucio's procedure in laying the carpet was as follows: a piece of carpet the length of the hallway would be laid lengthwise, but rolled or folded over to cover only about half the length of the hall; glue would then be spread on the uncovered half of the hall; the carpet would then be unrolled onto the glue and that half of the carpet glued in place. The remaining unglued half would then be flipped back to expose the other half of the hall and the same process would be repeated until the entire floor was covered with carpet. Following this procedure, Lucio had carpeted the east end of the Building the morning of July 12. During the afternoon of July 12, when the plaintiff fell, he was engaged in carpeting the west end.

It is undisputed that the spreading of glue on the vinyl floor of the Building created a slippery and dangerous condition. There is also evidence that a person who is unfamiliar with adhesives would be unlikely to appreciate the slippery or dangerous condition of the floor at the time plaintiff fell. It is undisputed that plaintiff was not familiar with adhesives.

On the day of her injury, plaintiff entered the building through its Front Entrance, turned left down the central hallway and proceeded to the office of Mr. Clyde Wright, where she remained for a short period of time. At the time she entered the Building, she noticed a carpet truck which was parked near the entrance. She said that the presence of the truck gave her the impression that the Building was being measured for the installation of carpet over the coming weekend. After leaving Mr. Wright's office, plaintiff proceeded to the office of Allen & Shumate at the far west end of the central hallway. The office of Wright is not shown on the diagram, but the office of Allen & Shumate is shown thereon. Plaintiff testified that from the time she first entered the Building until she entered the Allen & Shumate office, she did not see any carpet installer at work in the hallway. Plaintiff remained in the Allen & Shumate office for some twenty minutes. As she exited the office, she initially stepped onto a dry and uncarpeted area about 17 inches wide which extended across

the west end of the hallway in front of the Allen & Shumate office. She then noticed the men laying carpet at the place marked ⊗ on the diagram. At that time the carpet was folded lengthwise against the north wall of the hallway, and the southern half of the hallway was uncovered by carpet. According to plaintiff, after initially stepping into the 17 inch area, she then stepped into the uncovered southern half of the hallway, which was then covered with freshly applied glue, slipped and fell into the office of Rhodes & Hicks. The obviousness of the glue, both as to sight and odor, is in dispute.

██ It is undisputed that Lucio was an independent contractor who created, in the performance of his work, a dangerous condition on the premises of the building. As such, he owed the same duty of care to business invitees, such as the plaintiff, as the Building itself would have owed. Restatement (Second) of Torts, § 384 (1965). Such a duty would include warning invitees of unreasonably dangerous conditions. Restatement (Second) of Torts, § 343 (1965). The duty to warn would not be affected by the invitee's knowledge of the dangerous condition. Such knowledge, even if derived from facts which displayed the danger openly and obviously, would only go to the invitee's own negligence. *Parker v. Highland Park, Inc.*, 565 S.W.2d 512 (Tex.Sup. 1978).

Lucio testified that, because of the risk of harm to occupants of the building, he would rather have installed the carpet after business hours or over the weekend. Royce Poelma, a floor covering contractor, testified that the glue which was used by Lucio was sufficiently transparent that a person unfamiliar with adhesives would be unlikely to appreciate its slippery or dangerous condition. For this reason, he said that the area of work should be completely barricaded if the building is open for business. David Gross, president of the defendant Building, testified that installation of carpet in an office building should be done after business hours or during the weekends because of the risk of harm to persons in the building. There is no evidence that the work area was barricaded or roped-off at any time.

Some people in the building were warned on July 12, 1974, and before plaintiff fell, of the danger presented by the glue on the hallway floor. Lucio testified that he instructed his employees to give verbal warnings to the tenants by going into the various offices and talking to the persons present. Although Lucio had no personal knowledge as to whether these instructions were ever carried out, the record contains the testimony of secretaries from both the Allen & Shumate and the Rhodes & Hicks offices who stated that they had received personal warnings.

Plaintiff testified that she never received any warning, verbal or otherwise, while in the building. This testimony stood uncontradicted by any evidence of probative force. The mere fact that she was present in offices, the occupants of which had been warned previously, raises no more than a mere suspicion that she, too, received some type of warning. Plaintiff further testified that while she did see the rolled-up carpet to her left as she left the Allen & Shumate office, and while she stepped to her right in order to go around the roll, she did not perceive any danger in stepping to her right.

██ Considering all of the evidence, and weighing it very carefully, it is our opinion that any finding by the jury that Lucio's failure to warn or failure to barricade was not negligence is against the great weight and preponderance of the evidence. Further, any finding that a slip and fall was not foreseeable to Lucio would likewise be against the great weight and preponderance of the evidence. The evidence is simply overwhelming to the effect that a reasonable person should have realized the dangerous condition created by the glue and the probability that users of the building would not appreciate the danger. The finding by the jury that Lucio's negligence in not warning or barricading was not a cause in fact of the plaintiff's accident is against the great weight and preponderance of the

evidence. Plaintiff's third and fourth points are sustained.

Plaintiff, in her second point of error, complains of the jury's answers of "None" to the inquiry relating to whether she was entitled to any money damages for "physical pain and mental anguish in the past" (Special Issue 21A), and for "loss of physical capacity other than wage earning capacity in the past" (Special Issue 21C). She contends that such findings are against the overwhelming weight and preponderance of the evidence.

Defendants, by counterpoints, claim that plaintiff, by moving that the trial court accept the jury verdict, waived her objections to such answers by the jury, and further say that this Court should not consider the point because of such waiver.

Rule 293, T.R.C.P., in essence, provides that when a verdict is accurate and in proper form, that it "shall be entered upon the minutes of the court." If the verdict is not responsive to the issue submitted, or contains conflicting findings, Rule 295, T.R.C.P., provides:

". . . the court shall call the jury's attention thereto in writing and send them back for further deliberation."

In the instant case, the jury awarded plaintiff $1,956.45 as damages for past medical expenses (Special Issue 19). When the verdict was returned, but prior to its being received by the court, counsel for all defendants advised the court that the award of $1,195.46 for past medical bills (Special Issue 19) and nothing for past pain and mental anguish (Special Issue 21A), and nothing for loss of physical capacity other than wage earning capacity in the past (Special Issue 21C), created a conflict which could be cured by sending the jury back for further deliberation. Counsel for plaintiff, while expressing dissatisfaction with the answers to Special Issues 21A and 21C, nevertheless, told the court that under the circumstances, and in the light of the provisions of Rule 293, the court was required to accept and receive the verdict, and so moved. The court then accepted and received the verdict.

■ Concerning the matter of conflicting findings, the courts have classified them as 1) irreconcilable conflicts and 2) fatal conflicts. Fatal conflicts are fundamentally erroneous and may not be waived; conflicts which are not fatal but which are irreconcilable may be waived. *Little Rock Furniture Mfg. Co. v. Dunn,* 148 Tex. 197, 222 S.W.2d 985 (1949). Defendants argue that the matter of conflicting answers in this case is controlled by the rule laid down in the *Little Rock* case, as follows:

". . . To require a judgment entered on a verdict containing conflicting answers to be set aside, the conflict between the answers must be such that one answer would establish a cause of action or defense, while the other would destroy it . . . The test in such [a] case is, whether taking the finding alone in the one instance, a judgment should be entered in favor of the plaintiff; and taking it alone in the other, judgment should be entered in favor of the defendant. . . ."

Defendants argue that when the above test is applied to the facts of the instant case, the conflicting answers have no effect with regard to the liability aspect of the trial court's judgment, and the application of the test here merely results in a change in the amount of recovery to which plaintiff would be entitled. They further argue that the conflict presented by the jury's answer to the damage issues in this case is not fatal, and, therefore, any objection which plaintiff may have had to such answers was waived when she moved that the court accept the verdict.

■ We hold that the answers to Special Issues 21A and 21C are not in conflict with the answer to Special Issue 19. In *Little Rock Furniture Mfg. Co. v. Dunn,* supra, the conflict was between the liability issues, not the damage issues. Neither the rule therein laid down nor the test announced apply to this case. The answers to all of the issues under discussion (19, 21A and 21C), have no bearing on liability. Special Issues concerning the act, negligence and

proximate cause are fact issues which deal with liability as a legal proposition; special issues concerning damages deal solely with independent elements of damage. See *Grabes v. Reinhard Bohle Machine Tools, Inc.,* 381 S.W.2d 395 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n. r. e.). An answer favorable to the plaintiff concerning one of the elements submitted and an answer of "none" or "zero dollars" to another issue does not put the answers in conflict. It merely shows that the plaintiff, according to the jury, met his burden of proof in one instance but not in the other.

We are of the opinion that the trial judge properly received the verdict without resubmitting such issues to the jury for further deliberation because of an irreconcilable non-fatal conflict. Plaintiff did not, by her motion, waive her right to attack the answer to Special Issues 21A and 21C in this appeal on the ground that each answer was against the overwhelming weight and preponderance of the evidence.

The fact that plaintiff was injured is not in dispute. As a result of her fall, she suffered a broken right ankle. This injury required surgery, hospitalization for ten days, a cast for approximately six weeks and crutches for approximately six months.

Plaintiff testified that, after leaving the hospital, her ankle was stiff, sore, and burned all the way up to the middle of her calf. Hospital records reveal that she was given prescription pain-killing medicine while in the hospital. Although the operating surgeon testified that plaintiff never complained to him of severe pain, he also testified that pain was a possible side effect of her injury, which he considered "serious." Plaintiff also testified that before the accident, she was teaching three art classes, painting for recreation and enjoyment, attending Art League field trips, doing volunteer door-to-door work for groups such as the Cancer Society and Heart Fund, and going on dine and dance dates with her husband. After the accident, however, she stated that she could only teach two art classes, found it more difficult to paint, had stopped attending field trips and doing volunteer door-to-door work, and could no longer dance.

 As a general rule, it is ordinarily the prerogative of the jury to set damages, but they have no authority to completely ignore the undisputed facts and arbitrarily fix an amount neither authorized nor supported by the evidence. *Clark v. Brewer,* 471 S.W.2d 639 (Tex.Civ.App.—Corpus Christi 1971, no writ); *Taylor v. Head,* 414 S.W.2d 542 (Tex.Civ.App.—Texarkana 1967, writ ref'd n. r. e.); *Bolen v. Timmons,* 407 S.W.2d 947 (Tex.Civ.App.—Amarillo 1966, no writ). The jury must award something for every element of damage resulting from an injury. *Bazzano v. Ware,* 530 S.W.2d 650 (Tex.Civ.App.—Beaumont 1975, writ ref'd n. r. e.); *Gallegos v. Clegg,* 417 S.W.2d 347 (Tex.Civ.App.—Corpus Christi 1967, writ ref'd n. r. e.); *Shofner v. McKey,* 345 S.W.2d 826 (Tex.Civ.App.—San Antonio 1961, no writ); *Clark v. Brewer,* supra.

 An analysis of the evidence in this case shows that the answers to Special Issues 21A and 21C to the effect that plaintiff did not suffer any "physical pain and mental anguish in the past" and did not sustain any "loss of physical capacity other than wage earning capacity in the past" are not only unsupported by any evidence, but are directly contrary to all the evidence. We are not here presented with a question of inadequacy of an award for some amount of damages with respect to the answers to Special Issues 21A and 21C, but whether the complete denial of any money damages for past physical pain and mental anguish and for loss of past physical capacity, as limited, were proper. In order to sustain the jury's answers to the contested issues, we would be required to hold that a preponderance of the evidence establishes that the injury was totally unaccompanied by pain and mental anguish and that the injury did not, in any way, result in a past loss of physical capacity except for loss in wage earning capacity. We are unable to so hold on the record presented here. The jury's answers to Special Issues 21A and 21C are against the great weight and preponderance of the evidence. The award of "None"

in response to each of such issues is an arbitrary denial of any recovery for each of the elements of damages in question. Plaintiff's second point is sustained.

By her fifth point of error, plaintiff contends that the trial court committed reversible error in refusing to instruct the jury, with respect to each issue involving the Building, that an owner of property is charged by law with knowledge of any dangerous condition which a reasonable inspection would have revealed. Plaintiff contends that the failure to give the tendered instruction "permeates the charge on all issues pertaining to the Building because what the Building should have done must be considered in light of the duty to inspect." Plaintiff complains that the charge, as submitted, allowed the jury to assume that the Building "had no obligation to inspect, and was not required to warn or guard against unknown dangers which a reasonable inspection would have revealed."

Rule 277, T.R.C.P., requires that the court "shall submit such explanatory instructions and definitions as shall be proper . . ." An instruction is "proper" if it finds support in any evidence and the inferences to be drawn therefrom, and if it might be of some aid or assistance to the jury in answering the issues submitted. *First State Bank & Trust Co. of Edinburg v. George,* 519 S.W.2d 198 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n. r. e.); *Meija v. Liberty Mutual Ins. Co.,* 544 S.W.2d 690 (Tex.Civ.App.—Houston [14th Dist.] 1976, no writ). In Texas, the trial court has considerable discretion in deciding what instructions are necessary and proper in submitting issues to the jury. *Spradling v. Williams,* 553 S.W.2d 143, 145 (Tex.Civ. App.—Beaumont 1977), aff'd 566 S.W.2d 561 (Tex.Sup.1978); *McCane Sondock Detective Agency v. Penland Distributors, Inc.,* 523 S.W.2d 62 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ); *First State Bank & Trust Co. of Edinburg v. George,* 519 S.W.2d 198 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n. r. e.). The question before us is whether the requested instruction might have been of some aid or assistance to the jury in answering the issues submitted. This question cannot be answered without first examining the issues which were submitted in this case.

The jury returned negative answers to each of the following special issues which were submitted concerning the liability of the Building in this case:

1. (9) "Do you find from a preponderance of the evidence that the Oil & Gas Center Building knew, or, in the exercise of ordinary care, should have discovered, that glue was being applied to the floor prior to Reve Thomas' fall?"

2. (10) "Do you find from a preponderance of the evidence that the failure of the building to warn Reve Thomas of the glue on the floor was negligence which was a proximate cause of her fall?"

3. (11) "Do you find from a preponderance of the evidence that the failure of the Oil & Gas Center Building to direct that carpet installation occur outside of regular business hours was negligence which was a proximate cause of Reve Thomas' fall?

4. (12) "Do you find from a preponderance of the evidence that the failure of the Oil & Gas Center Building to have a particular person in charge of building operations on the day in question was negligence which was a proximate cause of Reve Thomas' fall?"

5. (13) "Do you find from a preponderance of the evidence that the failure of the Oil & Gas Center Building to inspect its building and to become aware of the carpet installation was negligence which was a proximate cause of Reve Thomas' fall?"

Plaintiff did not object to the content or to the form of any of the above quoted special issues which were submitted to the jury. In addition, plaintiff does not attack on legal or factual sufficiency grounds the jury's answers to any of these special issues.

We fail to see how the charge as submitted necessarily allows the jury to as-

sume that the Building was under no obligation to "inspect," "warn" or "guard" against unknown dangers which a reasonable inspection would have revealed." The special issues specifically required the jury to examine the Building's conduct with respect to each "obligation" plaintiff mentions. The issues are framed in language that enable the jurors to understand the inquiries being made. The requested instructions were not necessary to assist the jury in properly answering any of the special issues pertaining to the Building's liability. In fact, we are of the opinion that the requested instruction is sufficiently unrelated to special issues number 10, 11 and 12 that the instruction might have confused the jury in answering these special issues. It cannot be said that the trial judge abused his discretion in refusing to submit the proffered instruction under the circumstances of this case. Plaintiff's point of error number five is overruled.

That portion of the judgment which decreed that Reve Thomas, plaintiff, take nothing against Oil & Gas Building, Inc., is affirmed, and the action brought against the defendant Oil & Gas Building, Inc., is severed from the action brought against the defendants E. D. Hand and Wally Lucio. Those portions of the judgment which decreed that Reve Thomas, plaintiff, recover $1,901.05 against the defendant E. D. Hand and that plaintiff take nothing against the defendant Wally Lucio are reversed and the cause as to the defendants E. D. Hand and Wally Lucio is remanded to the trial court for a new trial. Costs of this appeal are assessed 75% to the defendants E. D. Hand and Wally Lucio and 25% to the plaintiff Reve Thomas.

AFFIRMED IN PART, AND REVERSED AND REMANDED IN PART.