

# NUMBER 13-11-00503-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

LILLY HELENE SCHAFFER, M.D.,                              Appellant,

v.

NATIONWIDE MUTUAL INSURANCE CO.
AND NATIONWIDE PROPERTY AND
CASUALTY INSURANCE CO.,                                   Appellees.

## On appeal from the 28th District Court
of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Perkes
Memorandum Opinion by Justice Rodriguez

Appellant Lilly Helene Schaffer, M.D. challenges the jury's award of zero physical

pain damages in her case against against appellees Nationwide Mutual Insurance

Company and Nationwide Property and Casualty Insurance Company. By one issue, Shaffer argues that the evidence was factually insufficient to support the jury's zero-damages award for past physical pain. We reverse and remand.

## I. Background

In February 2006, Schaffer, who was driving north-bound on United States Highway 77 and was beginning to merge onto Interstate Highway 37 in northwest Corpus Christi, Texas, collided with a truck driven by Brady Lovins. Schaffer alleges that she suffered injuries to her lower back as a result of the accident. To treat her injuries, Schaffer underwent: physical therapy, first in April to June 2006 and, again, from September 2007 to January 2008; a series of lumbar steroid and other injections in the summer and fall of 2006 and throughout 2007; and, finally, lumbar fusion spinal surgery in February 2008. Schaffer alleges that she continued to suffer severe pain even after her surgery.

In connection with the accident, Schaffer sued Lovins for negligence. Schaffer also sued Lovins's employer, Tracey Barrett d/b/a Barrett Pools, for vicarious liability because Barrett owned the truck Lovins was driving. Finally, Schaffer sued Nationwide for underinsured motorist benefits owing under her auto and umbrella policies with the company.[1]

---

[1] Specifically, Schaffer asserted a claim against Nationwide Mutual—the issuer of her auto policy—for underinsured motorist benefits "in an amount up to the difference[] between her underinsured policy limits and the liability policy limits of [Lovins and Barrett]." Schaffer asserted a claim against Nationwide Property—the issuer of her umbrella policy—for the amount her damages exceed the policy limits of her underlying underinsured coverage.

Schaffer's underinsured benefits claims against Nationwide were tried to a jury.[2] The issue at trial was whether Lovins's negligence was the cause of the accident and whether and what damages Schaffer suffered as a result of the accident. After the close of evidence, the jury was questioned as to whose negligence caused the accident. The jury answered that both Lovins's and Schaffer's negligence were proximate causes of the accident. The jury then apportioned responsibility for the accident, finding that Lovins was seventy-five percent responsible and Schaffer was twenty-five percent responsible. Finally, the jury was questioned as to damages. The jury awarded zero damages for past and future physical pain, past and future earning capacity, past and future physical impairment, and future medical expenses. The jury awarded Schaffer $257,131.41 for past medical expenses. Schaffer filed a motion for new trial, arguing that the evidence did not support the jury's zero-damages awards for physical pain, earning capacity, and physical impairment. The trial court denied the motion for new trial.

## II.  Discussion

By one issue, Schaffer argues that the jury's failure to award her damages for past physical pain was against the great weight and preponderance of the evidence, i.e., was supported by factually insufficient evidence. We agree.

### A.  Standard of Review and Applicable Law

In reviewing a factual-sufficiency challenge to an adverse finding on which the appellant had the burden of proof, we determine whether "the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co. v. Francis*, 46

---

[2] Schaffer's claims against Lovins and Barrett were settled and neither defendant is party to this appeal.

3

S.W.3d 237, 242 (Tex. 2001). In our review, we consider and weigh all the evidence, but defer to the jury as the sole judge of the witnesses' credibility. *Id.*; *see Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). The jury may choose to believe one witness over another, and a reviewing court may not impose its own opinion to the contrary. *Golden Eagle Archery*, 116 S.W.3d at 761.

Should we find the evidence to be factually insufficient, we must "detail the evidence relevant to the issue in consideration and clearly state why the jury's finding is . . . so against the great weight and preponderance as to be manifestly unjust." *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). We must also "state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict." *Id.*

"Before a court can properly conduct a factual sufficiency review, it must first have a clear understanding of the evidence that is pertinent to its inquiry. The starting point generally is the charge and instructions to the jury." *Golden Eagle Archery*, 116 S.W.3d at 762. In this case, the jury was instructed, in relevant part, as follows:

> What sum of money, if paid now in cash, would fairly and reasonably compensate Lilly Schaffer for her injuries, if any, that resulted from the occurrence in question?
>
> Consider the elements of damages listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find.
>
> Do not include any amount for any condition that did not result from the occurrence in question.
>
> Do not include any amount for any condition resulting from the failure, if any, of Lilly Schaffer to have acted as a person of ordinary

4

prudence would have done under the same or similar circumstances in caring for and treating her injuries, if any, that resulted from the occurrence in question.

Answer separately, in dollars and cents, for damages, if any. Do not reduce the amounts, if any, in your answers because of the negligence, if any, of Lilly Schaffer.

The charge then listed the following elements of damages: past and future physical pain; past and future loss of earning capacity; past and future physical impairment; and past and future medical expenses. The jury awarded zero damages for all of the elements except for past medical expenses, for which it awarded Schaffer $257,131.41.

On appeal, Shaffer challenges only the jury's zero-damages award for past physical pain. "[W]hen only one category of damages is challenged on the basis that the award in that category was zero or was too low, a court should consider only whether the evidence unique to that category [renders the verdict] so against the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate bias." *Id.* at 775. "As a general rule, it is ordinarily the prerogative of the jury to set damages, but they have no authority to completely ignore the undisputed facts and arbitrarily fix an amount neither authorized nor supported by the evidence." *Thomas v. Oil & Gas Bldg., Inc.*, 582 S.W.2d 873, 881 (Tex. Civ. App.—Corpus Christi 1979, writ ref'd n.r.e.); *see Del Carmen Alarcon v. Circe*, 704 S.W.2d 520, 521 (Tex. App.—Corpus Christi 1986, no writ). In particular, the jury cannot ignore uncontroverted evidence of injury in denying any recovery for past physical pain. *See Monroe v. Grider*, 884 S.W.2d 811, 820 (Tex. App.—Dallas 1994, writ denied); *see also Golden Eagle Archery*, 116 S.W.3d at 775 ("[A] verdict awarding no damages for pain and suffering

5

should [not] be upheld on appeal if there is objective, undisputed evidence of a significant injury and the jury could not have compensated the injured party in some other category of damages."). However, where the evidence of pain is conflicting, scant, or more subjective than objective, a jury's zero-damages finding is not against the great weight and preponderance of the evidence. *Gonzalez v. Wal-Mart Stores, Inc.*, 143 S.W.3d 118, 123 (Tex. App.—San Antonio 2004, no pet.); *Blizzard v. Nationwide Mut. Fire Ins. Co.*, 756 S.W.2d 801, 805 (Tex. App.—Dallas 1988, no writ); *see also Barrios v. King Fisher Marine Serv., L.P.*, No. 13–07–00469–CV, 2010 WL 2136609, at *10 (Tex. App.—Corpus Christi May 27, 2010, pet. denied) (mem. op.); *Cesar v. Torres*, No. 13–07–00471–CV, 2009 WL 2914395, at *2–4 (Tex. App.—Corpus Christi Aug. 31, 2009, no pet.) (mem. op.).

## B. The Evidence

We have reviewed the testimony and other evidence presented at trial and have found the following evidence relevant to Schaffer's past physical pain resulting from the accident. First, Steven Remer, M.D. testified by video deposition that he is a pain management specialist and that he first treated Schaffer for a brief period in 2001 for neck pain. Dr. Remer testified that he began treating Schaffer for lower back pain after the 2006 accident. Dr. Remer first prescribed physical therapy, steroid injections into various facet joints, and a rhizotomy procedure that attempts to destroy the sensory nerves around the area in pain. But when those treatments did not alleviate Schaffer's pain, Dr. Remer performed further diagnostic tests—including MRIs and a discogram—to locate the source of Schaffer's back pain. Dr. Remer testified that the discogram

6

revealed fissures, or tears, in one of the discs in Schaffer's spine. Dr. Remer testified that these tears were the cause of Schaffer's pain and that because she never suffered any back pain before the accident and because the pain began immediately following the accident, he believed the accident was the cause of the injuries to Schaffer's discs and, therefore, the cause of her pain.

Later in the video deposition, Dr. Remer was asked about the earlier treatment Schaffer received before she was referred to him. Dr. Remer agreed that an examination by Schaffer's orthopedic surgeon in March 2006 uncovered few outward symptoms of injury to Schaffer's lower back: no swelling, normal reaction to inspection and palpitation of her neck and cervical spine, normal range of motion, normal muscle strength, and normal reflexes. The only symptom Schaffer showed in the examination by the orthopedic surgeon was "tenderness and spasm" at the "lumbosacral junction," which Dr. Remer explained was "essentially [her] low back." Dr. Remer was also asked about the results of the MRIs that had been performed before the discogram and agreed that the MRI results were normal and revealed no injuries. Finally, Dr. Remer was asked about the discogram procedure he performed and agreed that many doctors believe the procedure to be controversial. With regard to discograms, Dr. Remer also agreed that many doctors find the procedure to be unreliable because there are conflicting studies as to whether "discogenic pain is a real phenomenon" and therefore there are concerns that the procedure could result in "false positives."

Next, John Peloza, M.D. testified that he is an orthopedic spine surgeon who began treating Schaffer in September 2007. In his assessment of Schaffer, Dr. Peloza

reviewed the discogram performed by Dr. Remer and concluded that it showed multiple tears in the discs in Schaffer's lower back. Dr. Peloza testified that the torn disc was causing Schaffer's back pain. And based on the timing of when Schaffer first began to experience back pain, which she represented was following the February 2006 accident, Dr. Peloza believed that the accident had caused the torn disc. In short, Dr. Peloza believed that the accident was the cause of Schaffer's lower back pain. Dr. Peloza testified that because the conservative treatments performed by Dr. Remer had not succeeded in alleviating Schaffer's pain, he believed she was a surgical candidate and recommended lumbar fusion spinal surgery, which was performed in February 2008.

On cross-examination, Dr. Peloza testified that his physical exam of Schaffer's back revealed normal muscle strength, reflexes, and sensation. Dr. Peloza agreed that the only "objective" evidence he had of Schaffer's injuries came from the discogram. Dr. Peloza then acknowledged that another surgeon who had evaluated Schaffer found discograms to be unreliable and misleading and refused to recommend surgery on the basis of the discogram results.

Schaffer testified next. She stated that when she got out of her car after the accident, her lower back began hurting. She was evaluated at the scene by paramedics, who found her vital signs to be stable. Because she had multiple firearms and firearm accessories in her car, Schaffer made arrangements to have her car towed back to Dallas immediately. Schaffer rode in the tow truck back to Dallas; she took ibuprofen and applied a cold pack to her lower back to alleviate the pain during the ride. The morning after the accident, Schaffer contacted her primary care doctor because she was still

8

experiencing back pain. Her primary care doctor prescribed pain killers, muscle relaxers, and a course of physical therapy. Schaffer then went to Dr. Huntly Chapman, an orthopedic surgeon, for a consultation. Dr. Chapman referred her to Dr. Remer for pain management. With regard to her pain, Schaffer testified that it continually worsened after the accident. She testified that the physical therapy made her pain worse, and the various injections only temporarily relieved her pain. She testified that she is still suffering serious pain even after her February 2008 back surgery. Schaffer testified that she had never had lower back pain until the February 2006 accident. She testified that she had been in another car accident in 1997, but that she had only suffered mild back spasms in that accident. She testified that her neck had been more seriously injured in that accident and it took some time for her neck injury to heal, but that the back spasms had not persisted.

Finally, two doctors called by Nationwide gave testimony relevant to Schaffer's past physical pain. First, Nicholas Tsourmas, M.D., Nationwide's expert physician who examined Schaffer's medical records and provided his opinion as to her diagnosis and treatment, testified that he reviewed the notes of all of Schaffer's treating physicians, the x-rays, the discogram report, the MRI reports, pictures of the accident scene, and the depositions of Schaffer and Dr. Remer. Dr. Tsourmas testified that the only condition he observed in the MRIs were "degenerative changes" to Schaffer's spine that were likely congenital and were otherwise normal for someone of her age.

In his review of the records, Dr. Tsourmas became concerned about Schaffer's "escalating narcotic use recommended by her pain management physician" and was

9

concerned about "addiction[] developing with [the] increasing strength of [the] medications prescribed."  But he later testified that he did not believe Schaffer "was malingering or faking pain or injury . . . so she can get drugs."  Dr. Tsourmas testified that he believed Schaffer "sought treatment in good faith."

Dr. Tsourmas also testified about the discogram procedure used by Drs. Remer and Peloza to diagnose Schaffer's disc tears.  He testified that the discogram "is a poor diagnostic maneuver" and "put[] her at risk for having problems later in the future," namely pain and "increased disc problems" at the "site of the discography injection."  Dr. Tsourmas agreed with one of the earlier surgeons from whom Schaffer sought treatment, Richard Jackson, M.D., that he would not have recommended the type of surgery Schaffer eventually underwent based on the results of the discogram.

With regard to the cause of Schaffer's injury and pain, in particular, Dr. Tsourmas gave the following testimony:

Q:    Okay.  And what do you think was the cause of the pain that she continued to experience and report in her low back?

A:    I don't know.

Q:    Do you think the motor vehicle accident was a substantial factor in her condition?

A.    As far as her degenerative condition, no.

Q:    And do you think she received some injury in the motor vehicle accident?

A.    Yes.

Q.    Would you explain that to the jury, please?

A.    Well, I think all of her records are quite clear.  She had an accident

10

and complained initially of neck pain, back — mid-back pain and lower back pain. I think that is from the accident. And despite all the diagnostic testing she had, multiple examinations she had by — I don't know how many doctors, I still don't — I'm still not sure as a professional I can say, "I know what your cause of back pain is."

What I am comfortable saying, most people are calling now is nonspecific. I believe your back hurts, I just don't know why or where.

. . . .

Q: And as far as you told the jury awhile ago, you think she had some injury from the motor vehicle accident in 2006. What injury do you think she had and what was appropriate to address it?

A: . . . I think virtually all the treatments she had throughout 2006 was either reasonable for a therapeutic or a diagnostic point of view. She needed that treatment to either fair [sic] it out, what might have been injured in the accident, or to treat what was injured in the accident. . . .

. . . .

. . . I think at some point in time albeit somewhat arbitrary that Ms. Schaffer's problems were recognized to be degenerative. The degenerative disc disease. . . . And at some point in time, six, eight months after this accident, the treatment thereon was for that degenerative problem and probably not . . . [for the] nonspecific back pain caused by this accident.

. . . .

Q: And we still have — have we now, as we sit here today, has anyone determined the cause of the low back pain?

A: In my best estimation, looking at all of her medical records and what all of her doctors say, I would still say no, I don't have a good answer for Dr. Schaffer if she asked me, "why do I hurt?"

Q: Do you have an opinion whether or not the motor vehicle accident caused or was a substantial factor in bringing about her injury and without which the event would not have occurred?

11

A: Well, certainly all of the medical care she had for that almost entire year 2006, I think was made necessary by the accident. But again, I think the opinions I have offered previously suggest that some time after that, even though that might be somewhat arbitrary, that ultimately her care was for a degenerative disc problem.

. . . .

Q: Dr. Tsourmas, [can] we agree based on a reasonable degree of medical probability, Lilly Schaffer experienced back pain as a result of the February 2006 motor vehicle accident?

A: Yes.

. . . .

Q: Have you seen any evidence in the 20 hours or more you spent looking at the records in this case that Dr. Schaffer ever had any low back pain before the February '06 motor vehicle accident?

A: No, sir.

In short, the testimony shows that Dr. Tsourmas believed that Schaffer suffered a general traumatic back injury as a result of the accident and that the symptoms she suffered for approximately the first year after the accident were the sort of "nonspecific" pains one suffers from general trauma in a car accident. But Dr. Tsourmas believed that any symptoms Schaffer suffered after that initial period were attributable to the degenerative spinal condition revealed by the MRIs.

Dr. Jackson was Nationwide's final medical witness. Dr. Jackson, an orthopedic surgeon, testified that he examined Schaffer in May 2007, a little over a year after the accident. He reviewed the MRIs and other imaging that had been done on Schaffer and found only "minimal drying out or desiccation of the very bottom disc." He also reviewed the discogram report and confirmed that there was a tear in one of her discs, but would

12

not recommend surgery because of the risks involved and the low rates of success. With regard to Schaffer's injury and pain resulting from the accident, Dr. Jackson gave the following testimony:

> Q:    Dr. Jackson, did Dr. Schaffer, based upon your review of her and her reporting to you, did she have any complaints of back pain prior to this automobile collision?
>
> A:    She did not.
>
> Q:    Based on her complaints and your examination, what disc would have been the problem for her? In other words, where would you have believed that that pain was coming from?
>
> A:    It was my initial thought it wasn't from the disc, but from a deep contusion or strain or sprain to the muscles caused by the impact of the collision.
>
> . . . .
>
> Q:    When Dr. Schaffer came in to see you, did you have any reason to doubt her complaints of pain?
>
> A:    No.

In his testimony, Dr. Jackson also expressed concern about Schaffer's possible dependence on pain medications. He believed that the initial pain Schaffer suffered as a result of a potential deep bruise or contusion caused by the accident was being artificially extended by her reliance on narcotic pain medication.

## C.   Analysis

Having reviewed all of the evidence relevant to the jury's zero-damages finding, we believe this finding was against the great weight and preponderance of the evidence. The evidence that Schaffer was injured in some way and suffered some pain as a result of the accident was undisputed. *See Thomas*, 582 S.W.2d at 881.

Every witness agreed that at least part of Schaffer's injuries and pain following the accident were caused by the accident. Specifically, every witness testified that Schaffer had never suffered significant back pain prior to the accident, aside from the minor back spasms caused by the 1997 accident that fully resolved. Dr. Remer and Dr. Peloza believed that the disc tears revealed by the discogram were caused by the accident and that those tears caused Schaffer pain. And although Dr. Tsourmas and Dr. Jackson disagreed that Schaffer's disc tears were caused by the accident and instead believed that the tears were symptoms of degenerative disc disease, both conceded in their testimonies that at least part of Schaffer's pain was caused by the accident. Dr. Tsourmas, in particular, testified that all of the treatment Schaffer received in 2006—the physical therapy and various injections—were necessitated by the accident. Both Dr. Tsourmas and Dr. Jackson testified that Schaffer suffered some sort of general trauma, typical of automobile collisions, from the February 2006 accident and that she suffered pain as a result.

The testimony regarding the reliability of discograms, whether Schaffer also suffered from degenerative disc disease, and whether Schaffer's pain was aggravated because of a possible dependence on narcotic pain medication is relevant only to the severity of Schaffer's pain and the length of time after the accident during which her pain was attributable solely to the accident. This evidence does not negate the foregoing consensus by the witnesses that Schaffer suffered some injury and some pain from the accident.

By an additional argument, Schaffer urges us to conclude that the zero-damages

14

award was supported by factually insufficient evidence because the jury awarded a substantial sum for past medical expenses caused by the accident. *See Monroe*, 884 S.W.2d at 820 (holding that an award of zero damages for pain was factually insufficient where the plaintiff produced medical records documenting her injury that were not disputed by the defendant); *Prescott v. Kroger Co.*, 877 S.W.2d 373, 375–76 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (holding that where there was undisputed, objective medical evidence of the plaintiff's injury, including a back surgery that was undisputedly necessitated by the incident in question, it was against the great weight and preponderance of the evidence for the jury to award zero damages for pain). Schaffer argues that the jury's award of zero damages for pain contradicts this finding because Schaffer necessarily experienced pain from the back surgery she underwent. We decline to reach this argument because our conclusion regarding the undisputed testimony of Schaffer's past pain is dispositive of the appeal. See TEX. R. APP. P. 47.1.

Nationwide responds with two arguments in addition to their general analysis of the evidence presented at trial. First, Nationwide argues that Schaffer waived her issue on appeal because she failed to challenge the conflicting jury findings, i.e., the fact that the jury awarded past medical expenses but no damages for past physical pain. We note initially that Schaffer has raised no appellate issue based on conflicting jury findings; we believe her argument is grounded entirely in a factual insufficiency analysis. But to the extent this argument is a response to Schaffer's argument described in the preceding paragraph, we find no need to address it because our reversal is based purely on Schaffer's factual insufficiency argument and not any conflicting-findings arguments.

15

Second, Nationwide argues that Schaffer invited the error about which she complains on appeal by submitting a jury charge that questioned the jury as to whether the negligence of either or both parties caused the "occurrence" rather than whether their negligence caused Schaffer's "injuries." Nationwide appears to argue that the use of the term "occurrence" confused the jury and that if the jury did not properly consider whether Lovins's negligence caused her past pain, "such error was invited by and as a direct result of Schaffer's insistence that the jury be asked only about the causation of the 'occurrence' and not the injuries for which she sought to recover." We first note that the invited error doctrine does not apply to Schaffer's appellate issue. The doctrine of invited error applies when a party requests that a trial court make a specific ruling and then complains about the ruling on appeal. *In re Dep't of Family Protective Servs.*, 273 S.W.3d 637, 646 (Tex. 2009). Here, the request identified by Nationwide is the inclusion of certain language in the jury charge. But Schaffer makes no complaints about the jury charge on appeal, and we do not believe the invited error doctrine has any bearing on Schaffer's evidentiary sufficiency issue. Regardless, to the extent the doctrine does apply, we note that the jury charge included the following language: "What sum of money . . . would reasonably compensate Lilly Schaffer for her *injuries*, if any, that resulted from the occurrence in question?" (Emphasis added.) In other words, the jury charge did question the jury in terms of Schaffer's injuries, not merely the "occurrence." Thus, we cannot conclude that the charge propounded by Schaffer invited the error about which she complains on appeal. In short, we are not persuaded by Nationwide's argument in this regard.

16

"Although the amount of damages is largely within the jury's discretion, the jury must award something for every element of damage resulting from an injury." *Del Carmen Alarcon*, 704 S.W.2d at 521. Here, there was simply no evidence that supported the jury's finding that Schaffer suffered zero past pain. *See Pool*, 715 S.W.2d at 635. And the evidence that Schaffer suffered some pain was neither scant nor conflicting. *See Gonzalez*, 143 S.W.3d at 123; *see also Barrios*, 2010 WL 2136609, at *10. Schaffer's past physical pain was a fact that was established by her evidence and conceded by the medical witnesses called by Nationwide. *See Thomas*, 582 S.W.2d at 881; *see also Golden Eagle Archery*, 116 S.W.3d at 775; *Monroe*, 884 S.W.2d at 820. As such, we conclude that the jury's finding that Schaffer was entitled to zero damages for past physical pain was so against the great weight and preponderance of the evidence as to be manifestly unjust. Schaffer's appellate issue is sustained.

### III. Conclusion

We reverse the judgment of the trial court, and because both liability and damages were challenged, we remand for a new trial on all issues. *See* TEX. R. APP. P. 44.1; *Estrada v. Dillon*, 44 S.W.3d 558, 561 (Tex. 2001).

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
16th day of May, 2013.

17